JIMMY LEE DULL, PHILLIP E. INGRAM AND WILLIAM EAGLE v. MUTUAL OF OMAHA INSURANCE COMPANY, UNITED BENEFIT LIFE INSURANCE COMPANY, RICHARDSON AGENCY OF WINSTON-SALEM, INC.

No. 8621SC1022

(Filed 21 April 1987)

**1. Rules of Civil Procedure § 56— 12(b)(6) motion denied—summary judgment not precluded**

    The denial of a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6), does not prevent the court from allowing a motion for summary judgment based on the materials permitted by N.C.G.S. § 1A-1, Rule 56.

Dull v. Mut. of Omaha Ins. Co.

**2. Unfair Competition § 1— termination of insurance agency contract—violation of exclusivity provision—summary judgment for defendants proper**

In an action in which plaintiffs sought damages for the termination of their contracts as insurance agents for selling policies of other insurance companies, the trial court did not err by granting defendants' motion for summary judgment on unfair and deceptive trade practice claims where the agency agreements did not involve the sale of any goods between the parties; plaintiffs did not forecast any evidence that consumers were prevented from purchasing insurance contracts on an open market as a result of defendants' acts or that defendants' competitors were in any way foreclosed from marketing insurance products to the public; plaintiffs were free under the terminable at will provisions of the contracts to terminate their relationship with Mutual and United and sell the products of other companies; the non-brokerage restrictions placed upon plaintiffs merely prevented them from using defendants' resources to promote and sell the products of competitors; and the facts of the case disclose no acts or practices on the part of defendants which may be held inequitable, oppressive, offensive to public policy or substantially injurious to consumers. N.C.G.S. § 75-1.1.

**3. Unfair Competition § 1— termination of insurance agency contract—no violation of N.C.G.S. § 58-54.4**

The trial court properly granted defendants' motion for summary judgment in an action arising from the cancellation of plaintiffs' insurance agency contracts by defendant insurance company for selling policies of other companies where there was no substantial evidence sufficient to sustain an issue of fact as to defendants' violation of either N.C.G.S. § 58-54.4(2) or N.C.G.S. § 58-54.4(4) in that there were mutual rights to terminate the agency contracts at will; there was no evidence of any act of coercion or intimidation tending to result in unreasonable restraint of the business of insurance; and there was no evidence that defendants' acts caused the dissemination of any deceptive or misleading statement with respect to the business of insurance.

**4. Contracts § 27.2— termination of insurance agency contracts—breach of implied provisions of good faith—summary judgment for defendants proper**

In an action arising from the termination of plaintiffs' insurance agency contracts with defendants for selling policies for other companies, the trial court did not err by granting defendants' motions for summary judgment on plaintiffs' claims that defendants breached implied provisions of their contracts by not acting in good faith where the Mutual contract provided that each agent would procure applications for insurance "only in the Company or its partially or wholly owned subsidiaries"; plaintiffs' agency agreements explicitly provided that they were terminable at the will of either party upon notice; no additional restrictions upon the rights of either party to terminate the agreement were contained therein; and there was no evidence that defendants exercised the termination at will clause of the contracts with the intent to wrongfully deprive plaintiffs of any commissions or other benefits to which they were entitled or for any other wrongful or unconscionable purpose.

APPEAL by plaintiffs from *Bailey, Judge*. Order entered 20 August 1986 in Superior Court, FORSYTH County. Heard in the Court of Appeals 5 February 1987.

Plaintiffs brought this action seeking damages which they allegedly sustained when defendants terminated their contracts as insurance agents. Defendant Mutual of Omaha (Mutual) is engaged in the business of selling health and accident insurance in North Carolina. Defendant United Benefit Life Insurance Co. (United), a wholly-owned subsidiary of Mutual, is engaged in the business of selling life insurance in North Carolina. Defendant Richardson Agency of Winston-Salem, Inc. (Richardson) is the general agent for defendants Mutual and United in a thirty-three county territory of the State. Plaintiffs are former insurance agents for Mutual and United who operated out of the offices of the Richardson Agency.

In their complaint, plaintiffs alleged that they each entered into contracts with Mutual and United, respectively, pursuant to which they were independent contractors entitled to sell life, accident and health insurance offered by defendants and by companies other than defendants. Plaintiffs alleged that during the late 1970's and early 1980's sales of life insurance products offered by United began to decline and many existing policies were permitted to lapse by policyholders. They alleged that the decline was directly attributable to the increasing availability, through competing insurance companies, of "current interest sensitive products" (CISP) which were not then offered by United to the majority of plaintiffs' clientele. Subsequently, plaintiffs began to sell, in some instances replacing existing United policies, CISP offered by defendants' competitors. In response to their actions, plaintiffs alleged that in October 1982, defendant Richardson initiated a policy requiring independent agents such as plaintiffs to deal only in products offered by Mutual and United, except with regard to "surplus lines, rejects and requests for coverage not offered by Mutual or United." When plaintiffs continued to broker life insurance products of defendants' competitors, their agency contracts with both United and Mutual were terminated. Plaintiffs alleged that defendants, by instituting the non-brokerage policy and by terminating plaintiffs' contracts, breached their implied covenant of good faith in the performance of the contracts

and engaged in unfair and deceptive trade practices in violation of G.S. 75-1.1.

In their answers, defendants admitted that plaintiffs were independent contractors under contracts with United and Mutual which were terminable at the will of either party upon written notice and that plaintiffs' contracts with United and Mutual were terminated. Defendants denied the remaining material allegations of the complaint. United and Mutual asserted a counterclaim against plaintiffs alleging that plaintiffs had tortiously interfered with United's contractual rights with its customers and other insurance agents.

Defendants' motion for dismissal pursuant to G.S. 1A-1, Rule 12(b)(6) was denied, the cause was set for trial, and extensive discovery ensued between the parties. Defendants thereafter moved, pursuant to G.S. 1A-1, Rule 56, for summary judgment with respect to plaintiffs' claims. Plaintiffs appeal from the entry of an order granting the motion.

*Badgett, Calaway, Phillips, Davis, Stephens, Peed & Brown, by B. Ervin Brown, II, for plaintiffs appellants.*

*Allman, Spry, Humphreys, Leggett & Howington, P.A., by William D. Spry, Jr., and David C. Smith, for defendants appellees.*

MARTIN, Judge.

The issue to be decided in this appeal is whether defendants were entitled to summary judgment with respect to plaintiffs' claims. Plaintiffs argue that summary judgment was improper, contending that the previous denial of defendants' motions to dismiss plaintiffs' claims pursuant to Rule 12(b)(6) established "the law of the case" and precluded the subsequent entry of summary judgment dismissing those claims. In any event, they contend, genuine issues of material fact exist as to whether defendants have engaged in unfair and deceptive trade practices and have breached an implied covenant of good faith in the performance of the independent agent contracts with plaintiffs. We reject these contentions and affirm the trial court's ruling.

[1] There is no merit in plaintiffs' initial contention that summary judgment in favor of defendants was precluded because de-

fendants' earlier motion to dismiss for failure to state a claim had been denied. A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint; a motion for summary judgment pursuant to Rule 56 presents the question of whether, based on materials presented to the court in addition to the pleadings, there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Barbour v. Little*, 37 N.C. App. 686, 247 S.E. 2d 252, *disc. rev. denied*, 295 N.C. 733, 248 S.E. 2d 862 (1978). Therefore, the denial of a Rule 12(b)(6) motion to dismiss does not prevent the court from allowing a subsequent motion for summary judgment based on the materials permitted by Rule 56. *Id.*; *Alltop v. J.C. Penney Co.*, 10 N.C. App. 692, 179 S.E. 2d 885, *cert. denied*, 279 N.C. 348, 182 S.E. 2d 580 (1971).

[2]  Plaintiffs also contend that the trial court erred in granting defendants' motion for summary judgment because questions of material fact exist as to whether defendants' actions constitute unfair and deceptive trade practices or amount to a breach of an implied covenant of good faith in the performance of the agency contracts. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The burden of establishing the lack of any triable issue of material fact is on the party moving for summary judgment. *Texaco, Inc. v. Creel*, 310 N.C. 695, 314 S.E. 2d 506 (1984). In ruling on the motion, the trial court must carefully scrutinize the moving party's papers and resolve all inferences against him. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). However, questions of fact which are immaterial to the legal issues are insufficient to defeat summary judgment. *Kessing, supra.*

The parties conducted extensive discovery in this action, including interrogatories and numerous depositions. In addition, affidavits were filed in support of, and in opposition to, the motion for summary judgment. Admittedly, there are many facts about which the parties disagree, however, none of these facts are material to our decision. The undisputed facts disclose that each plaintiff entered into a contract with Mutual which specified that his duties would be "[t]o procure applications from insurable risks for health and accident and life insurance, only in the Company or its

partially or wholly owned subsidiaries . . . ." The Mutual contracts, as well as the contracts between plaintiffs and United, specified that either party had the right to terminate the contract at any time upon written notice to the other. The contracts between plaintiffs and Mutual provided that nothing contained therein would be construed to create the relation of employer and employee; the contracts between plaintiffs and United contained a similar provision and specifically provided that the agent would be considered an independent contractor. Even so, plaintiffs were provided office space, telephones, postage, and general office support services by Richardson.

It is also undisputed that, beginning in the late 1970's and early 1980's, each plaintiff became licensed with other competing life insurance companies and began to sell the policies of these other companies, in some cases replacing existing United policies. In November 1982, defendants, in response to increasing brokerage activity by plaintiffs and other Mutual and United agents, implemented a policy consistent with the terms of the Mutual agency contract, restricting brokerage activities by agents, except for surplus lines, rejects and requests for coverage not offered by Mutual or United. Plaintiffs did not conform to that policy. Their contracts were terminated by defendants early in 1984.

Plaintiffs argue that the restrictions placed upon them by defendants amount to an unfair and deceptive trade practice, violative of G.S. 75-1.1, which makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce. . . ." G.S. 75-1.1 has been held sufficiently broad to provide a remedy for unfair and deceptive practices in the insurance industry, *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E. 2d 271 (1980), and to include practices involving the relationship of company and agent. *See Phillips v. Integon Corp.*, 70 N.C. App. 440, 319 S.E. 2d 673 (1984).

Our Supreme Court has explained that a practice will be considered unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980).

"A party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *Id.* at 264, 266 S.E. 2d at 622. A practice will be considered deceptive "if it has the capacity or tendency to deceive." *Id.* at 265, 266 S.E. 2d at 622. The determination of whether specific conduct amounts to an unfair or deceptive practice in violation of G.S. 75-1.1 is a question of law for the court. *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 331 S.E. 2d 677 (1985); *Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 314 S.E. 2d 582, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984).

Plaintiffs cite *Federal Trade Commission v. Brown Shoe Co.*, 384 U.S. 316, 16 L.Ed. 2d 587, 86 S.Ct. 1501 (1966) in support of their argument that defendants, by prohibiting plaintiffs from selling competitive life insurance products, committed an unfair trade practice. In *Brown*, the FTC brought suit against the nation's second largest shoe manufacturer alleging that their franchise contracts unfairly limited competition in violation of Section 5 of the FTC Act, interpretations of which are often looked to by North Carolina courts for guidance in construing the language of G.S. 75-1.1. Under the terms of Brown's franchise contracts, in return for special services and benefits from Brown, retail shoe store operators were required to promise that they would deal primarily with Brown and not purchase comparable lines of shoes from Brown's competitors. The United States Supreme Court concluded that these agreements unfairly limited competition by restricting the freedom of the shoe retailers to purchase in an open market, thereby substantially limiting trade between the retailers and Brown's competitors.

In our view, *Brown* is not analogous to the present case. Initially, we note that the franchise agreement in *Brown* created, between the parties, a buyer-seller relationship which was essential to the Court's decision. The effect of the restrictive contract was to prevent purchasers from buying on an open market and to foreclose Brown's competitors from a substantial number of customers. None of those factors are present in the case *sub judice*. The agency agreements do not involve the sale of any goods between the parties. Plaintiffs have not forecast any evidence that consumers were prevented from purchasing insurance contracts on an open market as a result of defendants' acts or that defendants' competitors were in any way foreclosed from marketing in-

surance products to the public. Moreover, plaintiffs were free, under the terminable at will provisions of the contracts, to terminate their relationship with Mutual and United and sell the products of other companies. The non-brokerage restrictions placed upon plaintiffs merely prevented them from using defendants' resources to promote and sell the products of competitors. The facts of this case disclose no acts or practices on the part of defendants which may be held to be inequitable, oppressive, offensive to public policy, or substantially injurious to consumers.

[3] Plaintiffs also contend that genuine issues of fact exist as to whether defendants have, by their actions, violated provisions of G.S. 58-54.4, which declares certain practices to be unfair or deceptive when committed in connection with the business of insurance. Specifically, plaintiffs argue that defendants, by prohibiting Mutual and United agents from brokering the policies of competitor insurance companies, have coerced the agents to "refrain from counseling with their clients about the advantages of CISP products," and have thereby caused the dissemination of deceptive and misleading statements. They contend that this conduct is violative of G.S. 58-54.4(2) and G.S. 58-54.4(4). The commission of any act or practice prohibited by G.S. 58-54.4 is, as a matter of law, an unfair and deceptive trade practice in violation of G.S. 75-1.1. *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 343 S.E. 2d 174 (1986).

From the record before us, we find no substantial evidence sufficient to maintain an issue of fact as to defendants' violation of either of the subsections of G.S. 58-54.4 cited by plaintiffs. There is simply no evidence, especially in view of the mutual rights of the parties to terminate the agency agreements at will, of any "act of . . . coercion or intimidation . . . tending to result in unreasonable restraint of . . . the business of insurance." G.S. 58-54.4(4) (1982). Likewise, plaintiffs have produced no evidence that defendants' acts caused the dissemination of any deceptive or misleading statement with respect to the business of insurance. G.S. 58-54.4(2) (1982). Defendants were properly granted summary judgment with respect to plaintiffs' claim for relief alleging violations of G.S. 75-1.1.

[4] In their other claim for relief, based on breach of contract, plaintiffs alleged that defendants did not deal with plaintiffs in

good faith, thereby breaching implied provisions of the contract. On appeal from summary judgment for defendants, plaintiffs make the same general assertions and argue that genuine issues of fact exist as to whether defendants acted in good faith in enforcing the non-brokerage policy and in terminating their agency agreements. We disagree.

It is well-established that there is implied in every contract an obligation of good faith and fair dealing by each party in the performance of the agreement. *Weyerhaeuser Co. v. Godwin Building Supply Co.*, 40 N.C. App. 743, 253 S.E. 2d 625 (1979). In view of the provision of the Mutual contract which provided that each agent would procure applications for insurance "only in the Company or its partially or wholly owned subsidiaries . . . ," no genuine issue exists with respect to whether defendants failed to act in good faith by enforcement of the non-brokerage policy. In addition, plaintiffs' agency agreements explicitly provided that they were terminable at the will of either party upon notice; no additional restrictions upon the rights of either party to terminate the agreement were contained therein. Even if, as plaintiffs contend, the agreements carried, in addition to the general requirement to perform in good faith, an implied good faith limitation upon defendants' rights to terminate at will, there is no substantial evidence sufficient to create a genuine issue of fact as to defendants' breach of such a duty. The record discloses no evidence that defendants exercised the termination-at-will clause of the contract with the intent to wrongfully deprive plaintiffs of any commissions or other benefits to which they were entitled or for any other wrongful or unconscionable purpose. There is no evidence that defendants have, since the termination, withheld from plaintiffs any compensation to which plaintiffs were entitled pursuant to the agreements.

We hold that defendants are entitled to summary judgment as to each of plaintiffs' claims for relief. The decision of the Superior Court is affirmed.

Affirmed.

Judges PARKER and COZORT concur.