TAR HEEL INDUSTRIES, INC. v. E. I. duPONT de NEMOURS & COMPANY, INC. and GUIGNARD FREIGHT LINES, INC.

No. 885SC82

(Filed 2 August 1988)

**Unfair Competition § 1— intrastate transportation contract—seeking alternatives to contract without giving notice—exercise of termination provision—no unfair and deceptive trade practice**

   Plaintiff was not entitled to relief on its claim for unfair and deceptive trade practices where plaintiff provided shuttle service between defendant's plant and a warehouse pursuant to a contract which provided for termination upon 60 days' notice; defendant did not engage in an unfair and deceptive trade practice by failing to notify plaintiff that it was seeking alternatives to plaintiff's contract; and it was not unfair or deceptive for defendant to exercise the contract's termination clause. N.C.G.S. § 75-1.1.

Tar Heel Industries v. E. I. duPont de Nemours

APPEAL by plaintiff from *Tillery (Bradford), Judge.* Order entered 8 May 1987 and judgment entered 24 July 1987 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 7 June 1988.

In April 1985, plaintiff Tar Heel Industries, Inc. filed a complaint against  E. I. duPont de Nemours & Company, Inc. (DuPont) and Guignard Freight Lines, Inc. (Guignard) alleging three claims for relief: (1) breach of contract; (2) civil conspiracy; and (3) violation of G.S. 75-1.1 *et seq.* On 11 February 1986, plaintiff voluntarily dismissed without prejudice all claims against Guignard, and Guignard is not a party to this appeal. DuPont's motion to dismiss the breach of contract claim was allowed by Judge Henry L. Stevens on 6 March 1986. On 8 May 1987, Judge Tillery allowed plaintiff's motion to compel discovery of certain documents and entered a protective order as to other documents. Plaintiff's motion to amend its complaint to allege the Chapter 75 claim in more detail was allowed on 2 July 1987. On that same date, Judge Tillery granted DuPont's motion for summary judgment on the civil conspiracy claim after plaintiff conceded that there were no genuine issues of material fact and DuPont was entitled to judgment as a matter of law. On 24 July 1987, Judge Tillery granted DuPont's motion for summary judgment on the Chapter 75 claim. Plaintiff appeals.

Plaintiff brings forward two assignments of error. First, it contends the trial court erred by refusing to compel DuPont to produce certain documents during discovery. Second, plaintiff assigns error to the granting of summary judgment on the Chapter 75 claim. We hold that plaintiff is not entitled to relief under Chapter 75 and affirm the trial court's granting of summary judgment. In light of our holding on this claim, we find it unnecessary to address plaintiff's assignment of error relating to discovery.

*William R. Shell and Carr, Swails, Huffine & Crouch, by Auley M. Crouch, III, for plaintiff-appellant.*

*Moore & Van Allen, by Joseph W. Eason and Denise Smith Cline, for defendant-appellee E. I. duPont de Nemours & Company, Inc.*

SMITH, Judge.

## I.  Facts

The affidavits and exhibits before the trial court on DuPont's motion for summary judgment on the Chapter 75 claim showed that in 1974 plaintiff and DuPont entered into a contract for intrastate carriage of yarn and staple fiber from DuPont's Cape Fear plant in Leland, North Carolina to warehouses in Brunswick County including a warehouse known as the Maco warehouse. The service plaintiff provided was known as a "shuttle service" and was required on a twenty-four hour basis since DuPont's Cape Fear plant had no on-site warehouse. On 15 December 1980, the parties entered into a new contract. The 1980 contract provided in part:

1. PERIOD OF AGREEMENT

This Agreement shall commence on January 1, 1981 and remain in effect until December 31, 1981, and shall continue in full force and effect thereafter, subject to the right of either party to terminate this Agreement at any time upon giving the other party at least sixty (60) days' prior written notice.

DuPont's employee John A. Rigsbee was responsible for monitoring the shuttle operation. His office was located in the Maco warehouse which was owned by DuPont and operated under a distribution contract by Gulf Atlantic Corporation (Gulf Atlantic). Rigsbee's duties included reducing the overall costs of the shuttle operation. During 1981, DuPont attempted to lower costs on the shuttle service by reducing the number of plaintiff's employees per shift and by reducing the number of trailers. On 15 December 1981, the parties executed an amendment to the 1980 contract reflecting the reduced number of trailers effective 1 January 1982.

Throughout 1981 and 1982, Rigsbee investigated other ways to obtain the shuttle service. He looked at a "management fee" system and a DuPont-operated system using leased trailers. Rigsbee also received proposals from Lebarnold, Inc. (affiliated with ADW, Inc.). In November 1981, Rigsbee sent a memo to a DuPont employee indicating that the management fee system would be more expensive than plaintiff's contract and that "[t]he only other

way we can sell this is through better control considering [plaintiff's president] is ready to retire and his manager of the shuttle is 71 years old." In May 1982, DuPont requested Lebarnold, Inc. and plaintiff to submit bids for the shuttle service. Plaintiff's bid was not the lowest bid, and plaintiff was allowed to submit a second bid in June 1982. Plaintiff's second bid was still not the lowest, but DuPont decided to continue using plaintiff's services because Lebarnold did not have the necessary intrastate operating authority from the Utilities Commission.

On 23 August 1982, plaintiff and DuPont executed a second amendment to the 1980 contract which changed the pricing system used to compensate plaintiff. This amendment followed DuPont's insistence that plaintiff reduce costs under the contract. On 28 February 1983, the parties executed a third amendment to the 1980 contract to account for charges for transportation to a warehouse not named in the original contract.

On 29 November 1983, DuPont again sought bids for the shuttle service and invited Williams Trucking Co., Guignard and plaintiff to submit bids. In its complaint, plaintiff alleges that Rigsbee demanded a copy of plaintiff's bid before the bidding period was closed and that Rigsbee shared plaintiff's bid with Guignard before Guignard's bid was submitted. However, plaintiff presented no evidence of these alleged facts at the hearing on summary judgment. DuPont presented evidence that its employees did not see plaintiff's bid before receiving Guignard's bid and that Guignard's employees did not see plaintiff's bid before Guignard's bid was submitted to DuPont.

Plaintiff's bid was not the lowest. Plaintiff's president, E. G. Lackey, wrote a letter to DuPont questioning whether DuPont had fully explained the contract requirements to Guignard. DuPont met with Guignard representatives and presented a draft of the contract reflecting Guignard's bid which bore the notation: "DRAFT ONLY. IN NO WAY SHOULD RECEIPT OF A COPY OF THIS AGREEMENT BE INTERPRETED AS A COMMITMENT ON THE PART OF E. I. DUPONT DE NEMOURS." DuPont again allowed plaintiff to submit another bid. Plaintiff did not rebid on DuPont's specifications but instead rebid on an alternative proposal.

On 26 January 1984, DuPont gave plaintiff 60 days' notice of DuPont's intent to terminate the 1980 contract. Plaintiff respond-

ed by demanding that DuPont repurchase five trailers and the licenses used in the shuttle operation. DuPont proposed to purchase four of the trailers but did not acknowledge legal responsibility for the trailers and licenses.

Guignard was awarded the shuttle service contract and published a tariff for the shuttle services. Plaintiff filed a complaint before the North Carolina Utilities Commission (NCUC) on 24 February 1984 challenging the Guignard tariff as an illegal rebating scheme and seeking to prevent actual operation under the tariff. On 26 March 1984, plaintiff offered to continue providing service under the terms of the terminated contract. DuPont agreed to extend the contract on a temporary basis but reserved the right to cancel immediately upon written notice. Plaintiff's president signed and returned DuPont's letter extending the contract on 2 April 1984.

In a recommended order, the NCUC rejected plaintiff's charge of illegal rebating and proposed to allow Guignard's tariff to become effective. Plaintiff appealed to the full Commission which on 18 September 1984 adopted the proposed order to be effective on 7 December 1984.

On 26 November 1984, DuPont advised plaintiff of its intent to terminate the contract extension effective 10 December 1984. Plaintiff appealed the NCUC order to this Court and obtained a stay of the order allowing Guignard's tariff to become effective. DuPont then extended plaintiff's contract "on a day-to-day basis" after 10 December 1984. Subsequently, this Court reversed the NCUC order. *State ex rel. Utilities Comm. v. Tar Heel Industries, Inc.*, 77 N.C. App. 75, 334 S.E. 2d 396 (1985).

In early April 1985, DuPont entered into a labor service agreement for drivers with Gulf Atlantic and an equipment lease agreement with L. B. Guignard, Inc. On 11 April 1985, DuPont informed plaintiff of its intent to terminate the contract extension on 20 April 1985. Plaintiff filed the complaint in this case and obtained a temporary restraining order and a preliminary injunction extending the effective date of the termination until 60 days after the 11 April 1985 notice. DuPont subsequently cancelled the labor contract with Gulf Atlantic and the equipment lease with L. B. Guignard, Inc. On 12 June 1985, Conoco, Inc., a subsidiary of DuPont, began providing shuttle service for DuPont.

When plaintiff first began providing shuttle services to DuPont in 1974, it had other customers besides DuPont. Over the years, plaintiff decided to devote all its business resources to the DuPont shuttle contract and stopped serving all its other customers. When Conoco took over the shuttle service, plaintiff ceased all operations.

## II.  Chapter 75 Claim

DuPont is entitled to summary judgment on the Chapter 75 claim "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and [DuPont] is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are . . . unlawful." G.S. 75-1.1. "The determination of whether an act is unfair or deceptive is a question of law for the court." *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 230, 314 S.E. 2d 582, 584, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984).

> Our Supreme Court has explained that a practice will be considered unfair 'when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' 'A party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.' A practice will be considered deceptive 'if it has the capacity or tendency to deceive.'

*Dull v. Mut. of Omaha Ins. Co.*, 85 N.C. App. 310, 315-16, 354 S.E. 2d 752, 755, *disc. rev. denied*, 320 N.C. 512, 358 S.E. 2d 518 (1987) (citations omitted). We hold that there are no material issues of fact and that DuPont did not violate G.S. 75-1.1. The trial court's ruling is affirmed.

In essence, plaintiff asserts that DuPont engaged in unfair and deceptive trade practices by not notifying plaintiff that it was looking for alternatives to plaintiff's contract. Plaintiff reasons that since DuPont was seeking alternatives, it acted unfairly by not informing plaintiff of its efforts to find another carrier or an

alternative management system and thus denied plaintiff the opportunity to seek other contracts to stay in business. We disagree. Under the facts of this case, we find that it was not unfair or deceptive for DuPont to study and seek alternative methods of transportation; nor was it unfair or deceptive to exercise the contract's termination clause.

In *Dull, supra,* this Court addressed whether it was unfair or deceptive for the defendants to terminate the plaintiffs' contracts to sell defendants' insurance policies. One of the factors the Court considered in determining that the defendants did not engage in unfair or deceptive trade practices was that the contracts were terminable at will. In this case, the contract only required 60 days' notice for either party to terminate the contract. DuPont's exercise of the termination clause does not constitute an unfair or deceptive trade practice. Furthermore, plaintiff cannot complain that it should have been informed that DuPont was looking for alternatives to plaintiff's contract. The parties' relationship was a business relationship premised on a contract which only required 60 days' notice of termination. Plaintiff was not entitled to notice of DuPont's efforts to reduce costs associated with the shuttle service. We note however that plaintiff was aware at least by May 1982, when DuPont first solicited bids for the shuttle service, that DuPont was considering alternatives to plaintiff's contract even though actual notice of termination was not given until January 1984. The fact that plaintiff continued to devote all its resources to performing the DuPont contract was a decision plaintiff made knowing that the contract could be terminated on 60 days' notice. Plaintiff is not entitled to recovery simply because its decisions to continue serving only DuPont had unfavorable results. No Chapter 75 claim exists against DuPont for exercising its right to terminate the contract.

### III.   Other Assignments of Error

Plaintiff also assigns error to the trial court's entry of a protective order and failure to order discovery of certain documents. In light of our holding that DuPont was entitled to terminate the contract according to the contract terms, we find it unnecessary to discuss this assignment of error.

The judgment of the trial court is affirmed.

Affirmed.

Judges EAGLES and ORR concur.