887 F.2d 1081
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TODD CONTROLS CORPORATION, Plaintiff-Appellant,
v.
FESTO CORPORATION, a Corporation, Defendant-Appellee,
and
Festo Pneumatics, a Corporation; Festo Pneumatic, a
Corporation; All Officers and Directors of Festo
Corporation, a Corporation, Whose Names are Unknown; All
Officers and Directors of Festo Pneumatics, a Corporation,
Whose Names are Unknown; All Officers and Directors of
Festo Pneumatic, a Corporation, Whose Names are Unknown;
Horst K. Saalbach; Barry Cooper, Defendants.
 No. 89-1027.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 7, 1989.
Decided: Sept. 27, 1989.
 
 Max D. Ballinger, on brief, for appellant.
 James R. Hubbard, David C. Smith, Allman, Spry, Humphreys, Leggett & Howington, P.A., on brief, for appellee.
 Before WIDENER, PHILLIPS and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Todd Controls Corporation ("Todd") appeals the grant of summary judgment in favor of defendant Festo Corporation ("Festo") in a diversity action by Todd under North Carolina's Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat. Sec. 75-1.1 et seq. (1988). We affirm the judgment of the district court.
 
 I.
 
 2
 The following material facts are undisputed: Festo is a New York corporation engaged in the manufacture of pneumatic components and Todd is a North Carolina corporation engaged in the sale of hydraulic and pneumatic equipment in North and South Carolina. In the last quarter of 1981, Todd began to negotiate with Hydra-Air, a distributor of Festo products in North and South Carolina, in an effort ultimately to obtain the Festo distributorship. Initially, Todd considered a merger with Hydra-Air, which was experiencing financial difficulties and owed a considerable debt to Festo. During negotiations, William Todd, the president and principal shareholder of Todd, and the president of Hydra-Air visited Festo to discuss a possible buy out or merger.
 
 
 3
 At the meeting, Festo agreed to supply its products to the new entity under the terms of the proposed merger as outlined to Festo's president, Horst Saalbach. Todd agreed to retain all Hydra-Air employees, promote the Festo line of products, and see that Hydra-Air's debt to Festo was paid. Based on that meeting, Festo began providing its products to Todd.
 
 
 4
 In early 1982, Todd decided against the merger with Hydra-Air because of that company's financial condition. However, Todd retained Hydra-Air's employees and bought its inventory of Festo products, allegedly to allow Hydra-Air to pay its debt to Festo. The facts are disputed as to whether or not Festo expressly agreed to the new arrangement or merely acquiesced. However, it is undisputed that Festo continued to supply its products to Todd, that the distributorship agreement was never committed to writing and that it was terminable at will.
 
 
 5
 In February of 1983, Festo placed Todd on "credit hold," requiring that Todd pay outstanding invoices prior to delivery of additional products, allegedly because of Todd's declining financial condition. Festo also required that Todd's checks clear the bank prior to delivery of new merchandise. Todd disputes Festo's characterization of its financial condition. In addition, Todd claims that it had not agreed to pay invoices within thirty days as claimed by Festo and that it had not exceeded a line of credit extended by Festo. However, a number of facts bearing on Todd's financial condition are undisputed. William Todd admitted that during the term of the distributorship, Todd was in "difficult times financially." In that regard, Todd found it necessary to ask certain sales employees to take a pay cut. In December of 1982, Todd's bank called a note causing cash flow problems for Todd. Shortly after, Parker Hannefin, one of Todd's major suppliers, placed it on credit hold until Todd signed a note on the debt. Although Todd disputes Festo's characterization of outstanding account balances allegedly owed to Festo, on March 15, 1983, Todd sent a cashier's check to Festo for "all past due invoices that we had record of."
 
 
 6
 On March 10, 1983, Festo gave written notice of termination of its distributorship arrangement with Todd. On March 15, Festo sent a letter to certain potential and existing customers in North and South Carolina indicating that it would offer direct sales and services starting immediately. Todd could continue to sell Festo products but was no longer able to do so free from competition.
 
 
 7
 In early March 1987, appellant filed a lawsuit in North Carolina Superior Court seeking damages for appellee's actions under the North Carolina Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat. Sec. 75-1.1. et seq (1988). The case was subsequently removed to the United States District Court for the Middle District of North Carolina. Appellant alleged that Festo was engaged in a scheme to put it out of business. Specifically, Todd claimed that Festo stole certain of its employees and its customer lists, terminated its distributorship and commenced direct sales to customers, imposed a credit hold on Todd, and refused to provide Todd with trade discounts and to repurchase inventory at its original price following termination of the distributorship. Appellee denied some of appellant's allegations and admitted others, claiming that even if they occurred they did not give rise to a cause of action under Sec. 75-1.1. The district court agreed and granted summary judgment for appellee.
 
 II.
 
 8
 Appellant claims that the district court erred in granting summary judgment for appellee because there are disputed material facts or in the alternative that the undisputed facts support summary judgment for appellant. We disagree. Upon de novo review of the record, taking every inference in favor of appellant, we are persuaded that the district court properly granted summary judgment for defendant-appellee for the reasons articulated in the district court's memorandum opinion.
 
 
 9
 The grant of summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if there is no genuine issue of a material fact and the moving party is entitled to a judgment as a matter of law. Thus it may be granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Similarly the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 10
 The district court rightly noted that whether specific conduct rises to the level of a violation of Sec. 75-1.1 is a question of law for the court. L.C. Williams Oil Co. v. Exxon Corp., 625 F.Supp. 477, 482 (M.D.N.C.1985). Accordingly, summary judgment has been granted in Sec. 75-1.1 cases where there are no genuine issues of material fact. See id. at 490-91; Dull v. Mutual of Omaha Ins. Co., 85 N.C.App. 310, 318, 354 S.E.2d 752, 757 (1987). We believe that this is such a case. Appellee's actions, even if taken in the light most favorable to appellant's claim, simply do not rise to the level of a deceptive or unfair trade practice. The district court addressed in great detail each of Todd's allegations and explained why none of them gave rise to a cause of action under Sec. 75-1.1. For the reasons stated in its lengthy memorandum opinion, the judgment of the district court is
 
 
 11
 AFFIRMED.