InSight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC, 2016 NCBC 75.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1783

INSIGHT HEALTH CORP. d/b/a
INSIGHT IMAGING,

        Plaintiff,

v.

MARQUIS DIAGNOSTIC IMAGING
OF NORTH CAROLINA, LLC;
MARQUIS DIAGNOSTIC IMAGING,
LLC; JOHN KENNETH LUKE;
GENE VENESKY; and TOM
GENTRY,

        Defendants.

**ORDER AND OPINION ON
DEFENDANT MDI-NC'S REVISED
MOTION FOR LEAVE TO AMEND
COUNTERCLAIMS**

1.    **THIS MATTER** is before the Court upon Defendant Marquis Diagnostic Imaging of North Carolina, LLC's ("MDI-NC" or "Defendant") Revised Motion for Leave to Amend Counterclaims (the "Motion") in the above-captioned case. After considering the Motion, briefs in support of and in opposition to the Motion, and the arguments of counsel at a hearing on the Motion, the Court memorializes its oral ruling at the hearing and hereby **GRANTS** in part and **DENIES** in part the Motion.

*Smith Moore Leatherwood, LLP, by Marcus C. Hewitt and Jeffrey R. Whitley, for Plaintiff InSight Health Corp. d/b/a InSight Imaging.*

*Roberts & Stevens, P.A., by Wyatt S. Stevens, Ann-Patton Hornthal, Stephen L. Cash, and John D. Noor, for Defendants Marquis Diagnostic Imaging of North Carolina, LLC, John Kenneth Luke, Gene Venesky, and Tom Gentry.*

Bledsoe, Judge.

I.

PROCEDURAL FACTS AND BACKGROUND

2. The Court recites the facts that are relevant for purposes of resolving the present Motion.

3. This action arises out of two transactions, which Plaintiff InSight Health Corp. d/b/a InSight Imaging ("Plaintiff" or "InSight") views as independent of one another and Defendant views as related transactions. Plaintiff's claims arise out of the alleged breach of a lease agreement in which InSight agreed to provide a magnetic resonance imaging scanner ("MRI") and associated staff and services (the "InSight MRI Agreement") to MDI-NC, which owns and operates a medical diagnostic imaging center in Asheville, North Carolina. (Am. Compl. ¶¶ 2a–2c, 13–15.) Defendant's counterclaims arise out of extended negotiations for InSight's purchase of MDI-NC's assets, a transaction which ultimately never occurred.

4. In 2011, the parties began discussing InSight's potential purchase of MDI-NC, and the parties entered into a Letter of Intent ("LOI") on June 12, 2012. (Countercl. ¶ 10.) The LOI stated that it was a "non-binding expression of the mutual intent of the parties" regarding InSight's proposed purchase of MDI-NC's assets for $2.1 million. (Pl.'s Br. Opp. Mot. Amend Ex. A, hereinafter "LOI," ¶¶ 4, 16.)

5. MDI-NC alleges that InSight agreed to purchase MDI-NC's assets free of all obligations and that the LOI's $2.1 million purchase price was contingent upon MDI-NC's termination of its then-existing MRI lease with Alliance Healthcare Services ("Alliance"). (Countercl. ¶¶ 8–10.) MDI-NC terminated its MRI lease with Alliance

and entered into a new MRI lease agreement with InSight on July 12, 2012 (the "InSight MRI Agreement"). (Countercl. ¶ 11.) Under the terms of the InSight MRI Agreement, InSight agreed to provide to MDI-NC an MRI scanner, as well as a "qualified technologist" to operate the MRI scanner, in exchange for MDI-NC's monthly payments in accordance with the payment schedule set forth in the MRI Agreement.

6. After purportedly discovering a calculation error in its due diligence calculations concerning MDI-NC's assets, InSight reduced its purchase offer to $250,000, which MDI-NC did not accept. (Def.'s Revised Mot. Amend Ex. A, hereinafter "Proposed Countercl." ¶¶ 37–38.) On November 15, 2013, less than two years into the seven-year term of the MRI Agreement, MDI-NC ceased operations and sold its assets to another company for less than $2.1 million. (Countercl. ¶ 20; Am. Compl. ¶ 38.) InSight alleges that MDI-NC has made no further payments on the MRI Agreement since that time, and InSight's claims arise out of this claimed breach of the MRI Agreement. MDI-NC alleges that InSight never intended to purchase MDI-NC's assets for $2.1 million and wrongfully induced MDI-NC into terminating its Alliance MRI lease and entering into the MRI Agreement with InSight in an attempt to leverage a purchase price for MDI-NC's assets below their fair market value. (Countercl. ¶ 19.) MDI-NC's claims arise out of the parties' failed negotiations and the LOI.

7. Plaintiff commenced this action on April 25, 2014, alleging claims against Defendants for breach of contract, fraudulent transfer under N.C. Gen. Stat. § 39–23

*et seq.*, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 *et seq.*, wrongful distribution and personal liability under N.C. Gen. Stat. § 57C-4-06, piercing the corporate veil, breach of fiduciary duty, and constructive fraud. MDI-NC asserted counterclaims on January 16, 2015 for fraud in the inducement and unfair and deceptive trade practices, claiming that InSight wrongfully induced MDI-NC into terminating its Alliance MRI lease and entering into the MRI Agreement with InSight in an attempt to leverage a purchase price for MDI-NC's assets below their fair market value. (Countercl. ¶ 19.)

8. On the last day of the discovery period, MDI-NC filed the Motion, seeking to alter certain factual allegations, to assert a new and separate claim for breach of the duty to negotiate in good faith, and to amend its fraud in the inducement claim to advance a theory of fraudulent concealment. Specifically, the Motion seeks to add allegations relating to InSight's alleged motive for entering into the LOI and InSight's methods for calculating MDI-NC's value. The Motion is now ripe for resolution.[1]

II.

LEGAL STANDARD

9. Under North Carolina Rule of Civil Procedure 15, "leave [to amend] shall be freely given when justice so requires." N.C. R. Civ. P. 15(a). A motion for leave to amend is addressed to the sound discretion of the trial court. *Chicopee, Inc. v. Sims Metal Works, Inc.*, 98 N.C. App. 423, 430, 391 S.E.2d 211, 216 (1990) (citation

---

[1] The Court announced its ruling on the Motion at the hearing and advised that it would issue this written ruling at a later date. In light of a then-upcoming dispositive motions deadline, the Court requested that MDI-NC file its Amended Counterclaims consistent with the Court's oral ruling shortly after the hearing, which MDI-NC did on March 7, 2016.

omitted). Although the Court is not required to state specific reasons when denying a motion to amend, proper grounds justifying denial include undue delay, bad faith, undue prejudice, futility of amendment, and repeated failure to cure defects by previous amendments. *Id.* Thus, "[a]lthough the spirit of the North Carolina Rules of Civil Procedure is to permit parties to proceed on the merits without the strict and technical pleading rules of the past, the rules still provide some protection for parties who may be prejudiced by liberal amendment." *Henry v. Deen,* 310 N.C. 75, 82, 310 S.E. 326, 331 (1984).

10. A motion for leave to amend is futile and appropriately denied when the "proposed amendment could not withstand a motion to dismiss for failure to state a claim." *Smith v. McRary*, 306 N.C. 664, 671, 295 S.E.2d 444, 448 (1982). Therefore, the Court may deny leave to amend where the proposed amendment "fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts that defeat the claim." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345–46, 511 S.E.2d 309, 312 (1999) (citations omitted) (describing the 12(b)(6) standard).

III.

ANALYSIS

A. Breach of the Duty to Negotiate in Good Faith

11. MDI-NC seeks to add a counterclaim for the breach of the duty to negotiate in good faith, relying on the Business Court's decision in *RREF BB Acquisitions, LLC v. MAS Props., LLC*, 2015 NCBC LEXIS 61 (N.C. Super. Ct. June 9, 2015) (McGuire, J.). In *RREF*, Judge McGuire concluded as a matter of first impression under North

Carolina law and on the unique facts of that case that an agreement to continue negotiating in good faith could be enforceable under North Carolina contract law. *Id.* at *57.

12. *RREF* involved approximately $5 million in loans made by a bank to a real estate company, which loans the parties renewed or modified almost annually for more than a decade. *Id.* at *6–7. After the bank decided not to renew the loans in 2012, the parties entered into negotiations to restructure the loans; shortly after entering into negotiations, and without informing the real estate company, the bank began marketing the loans for sale. *Id.* at *9–10. Towards the end of October 2012, after several months of negotiations, the real estate company's principal, inside legal counsel, and outside legal counsel met with the bank's representatives and outside legal counsel to discuss terms for restructuring the loans. *Id.* at *12–13. At that meeting, the bank submitted a term sheet to the real estate company, and the parties apparently agreed on most of the material terms of the proposed loan workout. *Id.* at *13. Less than a month later, the real estate company sent the bank a revised term sheet. *Id.* at *13–14. The next day, the bank ceased communications with the real estate company and shortly thereafter sold the loans to a third party. *Id.* at *15. The real estate company asserted a claim for the breach of the duty to negotiate in good faith, alleging that the bank breached that duty by (1) abandoning the loan workout negotiations or (2) failing to communicate that the October term sheet was a best and final offer, in which case the real estate company would have accepted rather than

countered the bank's offer. *Id.* at *51–52. Judge McGuire denied the bank's motion for summary judgment on that claim.

13. The *RREF* opinion held that an agreement to continue to negotiate in good faith could be enforceable, "provided that it met all of the requirements for contract formation under North Carolina law," because North Carolina law already implies in every contract a duty of good faith and fair dealing. *RREF*, 2015 NCBC LEXIS 61, at *57. Judge McGuire concluded that a duty to negotiate in good faith does not arise spontaneously or independently, but may arise from a binding "preliminary agreement" between parties to continue negotiations. *Id.* at *53–54 (quoting *Sony Ericsson Mobile Communs. USA, Inc. v. Agere Sys.,* 2007 NCBC LEXIS 28, *7–10 (N.C. Super. Ct. Aug. 27, 2007) (applying New York law to acknowledge preliminary agreements to negotiate as enforceable and capable of obligating parties "to continue to negotiate all terms in good faith").

14. In denying the bank's motion for summary judgment, Judge McGuire did not imply a duty to negotiate in good faith based on the terms of the alleged restructure agreement that was then at issue, but instead left open for later determination whether the parties had entered into an agreement to continue negotiating in good faith and whether the bank breached such an agreement. Specifically, Judge McGuire determined that:

> A jury could conclude that while the parties did not reach a final agreement on all of the material terms of a restructure deal in the October 29, 2012 meeting, their words and conduct established an agreement to continue negotiating in [an] attempt to finalize the terms of the agreement and close on a restructure agreement before the end of 2012.

*RREF*, 2015 NCBC LEXIS 61, at *57–58.

15.     In reaching that conclusion, the Court took into consideration evidence that at the October 29, 2012 meeting, the bank "stressed that the deal needed to, and would, close before the end of the year," that the parties then "shook hands to acknowledge the agreement reached," and that the bank subsequently sent the real estate company a term sheet that stated it was to "facilitate discussion on the terms contained herein" which included a summary of "the terms on which [the bank] believed the parties had reached agreement." *Id.* at *56–57.  Notably, the Court observed that even if parties have entered into a binding agreement to negotiate in good faith, that agreement "d[oes] not bind either party to the final terms of the . . . deal." *RREF*, 2015 NCBC LEXIS 61, at *58.  In sum, Judge McGuire found that the plaintiff had proffered sufficient evidence to allow a determination that the parties had made a contract, one of the terms of which was that the parties had agreed to continue to negotiate in good faith. This is separate from a determination that there exists an implied duty to negotiate in good faith independent of evidence that the parties' negotiations contemplated such an agreement.

16.     The parties filed a stipulation of dismissal in the *RREF* case on December 16, 2015 prior to any appeal.  The North Carolina appellate courts have not discussed *RREF*, its holding, or whether North Carolina law permits a claim based on a breach of an agreement to negotiate in good faith in any reported decision to date.   In assessing the viability of MDI-NC's proposed claim here, however, the Court need not adopt or reject the holding in *RREF* because the Court concludes that MDI-NC has

failed to allege two elements necessary to state the claim Judge McGuire recognized in *RREF*. In particular, the Court concludes that MDI-NC's purported claim for breach of an agreement to negotiate in good faith must fail, both because MDI-NC has failed to plead that the parties entered into a binding agreement to negotiate, and because MDI-NC has pleaded that InSight's alleged breach resulted from InSight's unilateral mistake rather than as an intentional act taken in bad faith.

17. The relevant facts here are very different from those in *RREF*. Indeed, unlike in *RREF*, the parties in the present case entered into a Letter of Intent, in which they set forth specific terms governing their duty to negotiate. The LOI entered into between InSight and MDI-NC is a fairly standard preliminary document that purports to be a "non-binding expression of the mutual intent of the parties."[2] (LOI ¶ 16.) Generally, letters of intent are found to be unenforceable agreements to agree when relied upon to enforce the contemplated transaction. *See JDH Capital, LLC v. Flowers*, 2009 NCBC LEXIS 8, at *15–16 (N.C. Super. Ct. Mar. 13, 2009) (holding a letter of intent unenforceable where it expressly states that it is non-binding, contemplates future agreements, and leaves material terms undecided).

18. The language of the LOI makes plain that there was no binding agreement under the LOI for InSight and MDI-NC to continue negotiations at the time of the

---

[2] The LOI was attached to InSight's brief in opposition to the Motion. Because the Court would be permitted to consider the LOI on a Rule 12(b)(6) motion to dismiss, the Court considers the LOI here in determining whether MDI-NC's proposed amendment would withstand a motion to dismiss. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (On motion under Rule 12(b)(6), the trial court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant.") (citation omitted).

alleged breach. Indeed, the LOI expressly stated that it was a "non-binding expression of the mutual intent of the parties," which would not give rise to any "legally binding, rights, or liabilities of any nature whatsoever" among the parties except as expressly provided. (LOI ¶ 16.) The LOI further provided that it did "not give any person or any entity any rights or claims against another in the event that either party for any reason or for no reason terminate[d] negotiations" except with regard to certain limited claims not relevant here. (LOI ¶ 16.)[3]

19. Moreover, the LOI contained an exclusivity provision obligating the parties not to negotiate with third parties. (LOI ¶ 11.) That provision expressly stated that MDI-NC "shall in good faith negotiate exclusively with [InSight] regarding the transaction" for a period of no more than ninety days. (LOI ¶ 11.) Notably, this provision only imposed an express duty to negotiate in good faith on MDI-NC. No provision of the LOI expressly imposed a parallel duty on InSight. Furthermore, the

---

[3] Paragraph 16 of the LOI specifically provides, in relevant part:

> 16. <u>Non-Binding Nature</u>. THIS LOI IS INTENDED TO CONSTITUTE A NON-BINDING EXPRESSION OF THE MUTUAL INTENT OF THE PARTIES REGARDING THE SUBJECT MATTER HEREOF. [Except as provided herein], neither InSight nor the Company shall have any legally binding obligations, rights or liabilities of any nature whatsoever to any party hereto or to any other persons or entities, whether pursuant to this LOI or relating in any manner to the Transaction or the consideration thereof. Notwithstanding anything in this LOI to the contrary, this LOI shall not constitute an obligation or commitment of any person or entity to enter into the Definitive Agreements, consummate the Transaction or pay any of the purchase price [set forth herein]. In addition, this LOI shall not give any person or any entity any rights or claims against another in the event that either party for any reason or for no reason terminates negotiations regarding a Transactions, other than in respect of claimed breaches of [the LOI's confidentiality, expenses, exclusivity, or indemnity provisions].

alleged breach of the agreement to negotiate as pleaded here did not occur until after the ninety-day exclusivity period had expired.

20.     Notwithstanding the provisions of the LOI, MDI-NC alleges that the parties' conduct gave rise to an agreement to negotiate in good faith after the expiration of the ninety-day period.  (Proposed Countercl. ¶ 65.)  This alleged conduct includes InSight's continued expression of its intent to consummate the transaction and its provision of a draft Asset Purchase Agreement to MDI-NC.  (Proposed Countercl. ¶¶ 26–27.)  However, the LOI expressly declared that "there shall be no obligations whatsoever based on such things as . . . extended negotiations . . . or courses of conduct (including reliance and changes of position)."  (LOI, preamble.)[4]  As noted, the parties further agreed that the LOI would not commit either party to go through with the final transaction and that the parties could walk away from the proposed deal for any reason or no reason.  (LOI ¶ 16.)  In the face of that language, the Court concludes that MDI-NC has not alleged that InSight assented to a binding agreement to negotiate beyond the scope of the LOI.  *See, e.g.*, *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007) ("In law, this agreement [to be bound] is called mutual assent and is customarily described as a 'meeting of the minds.'").

21.     MDI-NC also argues in opposition that the presence of a confidentiality clause, a clause requiring compliance with due diligence, and the description of the

---

[4]  The second paragraph of the LOI specifically provides, in relevant part, that "it is the parties' intent that, except as expressly provided below and until the execution of Definitive Agreements, if any, no agreements shall exist between them and there shall be no obligations whatsoever based on such things as parol evidence, extended negotiations, 'handshakes,' oral understandings or courses of conduct (including reliance and changes of position)."  (LOI, preamble.)

LOI as an agreement, are all indicators that, despite the LOI's contrary explicit language discussed above, the LOI, considered as a whole, implies an agreement to negotiate in the future. The Court finds MDI-NC's arguments unpersuasive in the face of the plain language of the LOI, particularly in light of the well-established rule of contract construction that "when general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics." *Woods-Hopkins Contracting Co. v. N.C. State Ports Auth.*, 284 N.C. 732, 738, 202 S.E.2d 473, 476 (1974).

22. The Court additionally concludes that MDI-NC's claim for breach of the duty to negotiate in good faith would be futile because MDI-NC has not identified conduct by InSight that would be in breach of such a duty if the duty were found to exist on these alleged facts. MDI-NC complains that:

> If InSight had fully disclosed the fundamental errors it made in calculating MDI of NC's assets, had accurately disclosed the amount it paid to purchase the subject MRI machine and then made a reasonable offer to buy the assets, MDI of NC would have continued negotiating with InSight in good faith and likely would have sold its assets to InSight for a reasonable, fair market value price."

(Proposed Countercl. ¶ 45.) MDI-NC further alleges that InSight withheld the fact that it had the additional goal of entering into a partnership with a third-party hospital. (Proposed Countercl. ¶¶ 23–24.) "A breach of the implied covenant of good faith and fair dealing 'requires the wrongful intent of a party to deprive another party of its contractual rights.'" *RREF*, 2015 NCBC LEXIS 61, at *47 (quoting *Hamm v. Blue Cross & Blue Shield of N.C.*, 2010 NCBC LEXIS 17, at *20 (N.C. Super. Ct. Aug. 27, 2010)). Here, MDI-NC essentially alleges that had InSight disclosed its valuation

method to MDI-NC, MDI-NC would have identified and corrected InSight's errors and the parties would have continued negotiating towards a mutually agreeable purchase price. InSight's failure to share its flawed calculations with MDI-NC is not alleged as an act of wrongful intent—but rather as InSight's unilateral mistake—and those allegations cannot therefore be the basis for a claim for the breach of the duty to negotiate in good faith. *See also, e.g., Dull v. Mutual of Omaha Ins. Co.*, 85 N.C. App. 310, 318, 354 S.E. 2d 752, 757 (1987) (noting that breach of duty of good faith and fair dealing requires wrongful intent).[5]

23.     The Court therefore finds that this case presents far different facts than those Judge McGuire confronted in *RREF*. Indeed, not only does this case involve an alleged contract document that contains specific provisions expressly disclaiming the contractual obligations that MDI-NC now seeks to enforce, but MDI-NC also repeatedly describes InSight's alleged breach as stemming from InSight's unilateral mistake rather than as an intentional act taken in bad faith. (Proposed Countercl. ¶ 45.)

24.     Accordingly, whether the rule arising from *RREF* is adopted or rejected by our appellate courts, the Court concludes that the LOI here fails to create any binding agreement or duty to negotiate in good faith on either party beyond, at most, the

---

[5] The Court considers it worthwhile to point out that, if the breach of the duty to negotiate in good faith claim were allowed and MDI-NC was ultimately successful, MDI-NC would likely be limited in its damages. Where such a claim is recognized, the traditional remedy for breach of the duty to negotiate in good faith is reliance damages. *See SIGA Techs., Inc. v. Pharmathene, Inc.*, 67 A.3d 330, 348 (Del. 2013). Those jurisdictions that allow expectation damages for the breach of an agreement to negotiate in good faith only do so if the aggrieved party can prove that the final contract would have resulted but for the breach and that damages are provable to a reasonable certainty. *Id.* at 349–51 (collecting cases).

ninety-day period contemplated in the document. Moreover, Defendant has failed to allege that InSight engaged in conduct in breach of the purported duty, a necessary element of the purported claim. As a result, MDI-NC's proposed counterclaim for breach of an alleged duty to negotiate is subject to dismissal as a matter of law and therefore MDI-NC's motion to amend to assert this proposed counterclaim should be denied as futile. *See, e.g., N.C. Council of Churches v. State*, 120 N.C. App. 84, 94, 461 S.E.2d 354, 360–61 (1995) (affirming denial of a motion to amend as futile where "plaintiff's claims, even as amended, cannot survive [a dispositive motion]").

B. Fraudulent Concealment

25. In its proposed revised counterclaims, Defendant seeks to expand its fraud in the inducement claim to include allegations of fraudulent concealment. Specifically, MDI-NC alleges that InSight failed to disclose to MDI-NC that its proposed asset purchase "was motivated by securing a partnership" with a local hospital, and this "constituted a concealment of a material fact." (Proposed Countercl. ¶ 50.) MDI-NC further alleges that because it had no "way of discovering the potential impact of InSight securing a partnership" with the hospital, its reliance on "InSight's various representations that it intended to purchase" MDI-NC's assets was reasonable. (Proposed Countercl. ¶ 55.) Defendant claims that InSight's concealment of this fact caused it damage—that had it known of InSight's intended partnership with the local hospital, it would not have executed the MRI Agreement and taken itself off the market, nor would it have terminated the Alliance MRI lease. (Proposed Countercl. ¶ 54.)

26. To successfully bring a claim for fraudulent concealment, a plaintiff must allege:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, *9 (N.C. Super. Ct. June 18, 2007) (alteration in original) (adopting *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195–96 (M.D.N.C. 1997)).

27. A legal duty to disclose usually does not exist outside of a fiduciary relationship. *Breeden*, 171 F.R.D. at 196; *see also Computer Decisions v. Rouse Office Mgmt.*, 124 N.C. App. 383, 389, 477 S.E.2d 262, 265–66 (1996) (holding that there is no duty of disclosure in a commercial transaction between commercial parties operating at arm's length). However, parties dealing at arm's length may be under a duty to disclose when "one party has taken affirmative steps to conceal material facts from the other." *Breeden*, 171 F.R.D. at 196; *see, e.g.*, *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) (holding that a party seeking to sell its interest in a corporation was under a duty to disclose after "he concealed material financial facts concerning the corporation's liquidity and indebtedness"). A duty to disclose in arm's length negotiations also arises "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both

ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 81 N.C. App. 295, 298, 344 S.E.2d 117, 119 (1986).

28. Looking to the first element of a fraudulent concealment claim, MDI-NC has failed to allege that a relationship existed between it and InSight which gave rise to a duty to speak. MDI-NC alleges no facts from which to conclude that it was not dealing with InSight at arm's length. Nor does MDI-NC allege any affirmative actions which InSight took to conceal the potential partnership with a local hospital or that InSight had knowledge of a "latent defect" in the subject matter of the parties' negotiations. The LOI itself is silent on the parties' respective motivations for the proposed deal, and MDI-NC has not alleged any other facts that give rise to a duty to disclose. MDI-NC therefore has failed to plead facts that establish an essential element of the claim, and the Motion to Amend fails on futility grounds to the extent it concerns the proposed additional theory of fraudulent concealment. *See Gottfried v. Covington*, 2014 NCBC LEXIS 26, *10–11 (N.C. Super. Ct. June 25, 2014) (dismissing a fraud by concealment claim for failure to state a claim where the parties were operating at arm's length under the terms of a negotiated contract, which did not give rise to a duty to disclose).

C. Undue Delay

29. MDI-NC filed the Motion on the same day that the discovery period expired. Adding a new claim for breach of the duty to negotiate in good faith and a theory of fraudulent concealment would likely necessitate the re-opening of discovery, including InSight's additional depositions of MDI-NC's principals to discern how the

disclosure of InSight's valuation errors would have affected MDI-NC's actions in the negotiations. The undue delay that would be caused by granting MDI-NC's Motion provides a further ground for the Court's determination that the Motion should be denied. *See, e.g., Greenshields, Inc. v. Travelers Prop. Cas. Co. of Am.*, 781 S.E.2d 840, 844 (N.C. App. 2016) ("Undue delay is a proper reason for denying a motion to amend a pleading.") (citations and quotations omitted).

D. Additional Factual Allegations

30. Although InSight opposes MDI-NC's proposed additional legal claims, InSight does not challenge MDI-NC's Motion to the extent it seeks to add facts not in the original counterclaims. In its brief in opposition to the Motion, InSight specifically identified the paragraphs of the proposed amended counterclaims that it sought to exclude. (Pl.'s Br. Opp. Mot. Amend Countercl. 24.) Those paragraphs specifically relate to the claims for breach of the duty to negotiate in good faith and fraudulent concealment. In denying MDI-NC leave to add these legal claims, the Court thus denies MDI-NC's Motion only in part, consistent with the paragraphs identified in InSight's brief. To the extent MDI-NC's proposed counterclaims seek to conform the pleadings to the evidence, the Court grants MDI-NC's Motion under N.C. R. Civ. P. 15(b) as set forth in the Conclusion below.

IV.

CONCLUSION

31.    For the foregoing reasons, the Court, in the exercise of its discretion, hereby

**GRANTS in part** and **DENIES in part** Defendant's Motion to Amend as follows:

a.  Defendant shall be permitted to file its amended counterclaims, provided, however, that Defendant's proposed new paragraphs 8, 18, 19, 23, 24, 28, 32, 34, 35, 36, 40, 41, 42, 43, 44, 45, 50, 54, 55, and 59–70 shall not be allowed.

b.  With respect to paragraphs 20, 21, and 47, the specific language referring to an obligation or failure to negotiate in good faith shall not be allowed.

c.  Defendant's Motion seeking to amend its counterclaims to allege a separate and independent claim for an alleged breach of the duty to negotiate in good faith and to amend its claim for fraud in the inducement to assert a theory of fraudulent concealment is **DENIED**.

d.  Defendant's Amended Counterclaims, filed March 7, 2016 in accordance with the Court's oral ruling at the hearing on the Motion, are hereby deemed timely filed, to the extent those Amended Counterclaims have been allowed as provided in this Order and Opinion.

**SO ORDERED**, this the 7th day of October, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases