NOVACARE ORTHOTICS & PROSTHETICS E., INC. v. SPEELMAN

[137 N.C. App. 471 (2000)]

sider" unpublished opinion cited by party), *aff'd*, 319 N.C. 627, 356 S.E.2d 357 (1987). Nonetheless, we "remind counsel of the [explicit] provisions of [N.C.R. App. P.] 30(e)," *id.*, prohibiting citation of unpublished opinions and use thereof as precedent.

No error.

Judges McGEE and HUNTER concur.

———————————

NOVACARE ORTHOTICS & PROSTHETICS EAST, INC., PLAINTIFF V.
ELMER SPEELMAN, DEFENDANT

No. COA99-564

(Filed 18 April 2000)

## 1. Injunction— preliminary—anti-competition covenant—ambiguity

The trial court did not err in denying plaintiff-employer's motion for a preliminary injunction against defendant-employee to enforce an anti-competition covenant, stating the employee shall not engage in a competing business prior to two years following the date of termination of the employee's employment by the employer or any other member of the company group, because: (1) the anti-competition clause is ambiguous and unclear as a matter of law as to whether the covenant was triggered when defendant resigned from his employment, and the ambiguity is construed against the drafter; and (2) plaintiff has not made the requisite showing that it is likely to succeed on the merits with respect to the claim

## 2. Injunction— preliminary—anti-competition covenant—trade secrets

The trial court did not err in denying plaintiff-employer's motion for a preliminary injunction against defendant-employee to enforce an anti-competition covenant to prevent defendant from misappropriating the company's "trade secrets," including its customer lists and other compilations of customer data, because: (1) plaintiff has failed to present evidence to show that the company took any special precautions to ensure the confidentiality of its customer information; (2) any information used

to contact the clients would have been easily accessible to defendant through the local telephone book; and (3) defendant had been treating the particular clients he contacted after his resignation since he began employment with plaintiff, and the personal relationship meant one could expect those clients would follow defendant to a competing business.

**3. Civil Procedure— motion to dismiss—application to stay litigation and compel arbitration**

The trial court erred in granting defendant-employee's motion to dismiss plaintiff-employer's claims for breach of contract and misappropriation of plaintiff's trade secrets under N.C.G.S. § 1A-1, Rule 12(b)(6) because defendant's motion was an application to stay litigation and compel arbitration pursuant to N.C.G.S. § 1-567.3(a), and thus, the trial court was required to conduct the appropriate inquiry and enter an order compelling or denying arbitration.

Appeal by plaintiff from order entered 4 December 1998 by Judge E. Lynn Johnson and from order entered 9 March 1999 by Judge Ronald L. Stephens in Superior Court, Cumberland County. Heard in the Court of Appeals 22 February 2000.

*Maupin Taylor & Ellis, P.A., by Michael C. Lord, for plaintiff-appellant.*

*Reid, Lewis, Deese, Nance & Person, L.L.P., by Renny W. Deese, for defendant-appellee.*

TIMMONS-GOODSON, Judge.

This appeal involves an action brought by NovaCare Orthotics & Prosthetics East, Inc. ("plaintiff" or "NovaCare") against Elmer Speelman ("defendant") seeking injunctive relief and other appropriate relief for breach of contract and misappropriation of plaintiff's trade secrets. Plaintiff appeals from an order denying its motion for a preliminary injunction and from an order dismissing all remaining claims against defendant pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. The pertinent factual and procedural information follows.

Plaintiff is in the business of providing individuals with custom bracing (orthotics) and artificial limbs (prosthetics). In December of

NOVACARE ORTHOTICS & PROSTHETICS E., INC. v. SPEELMAN

[137 N.C. App. 471 (2000)]

1997, plaintiff acquired the assets of Health Care Connection, Inc. ("HCC"), a provider of orthotics and prosthetics with offices at 4320 Fayetteville Road in Lumberton, North Carolina and 2444 Owen Drive in Fayetteville, North Carolina. At the time of the acquisition, HCC employed defendant as a BOC (Board for Orthotist Certification) Orthotist/Prosthetist. On 31 December 1997, plaintiff offered to employ defendant as its Center Manager in Fayetteville, and the parties executed an Employment Agreement ("the Agreement") for a period of three years.

Under Paragraph 7 of the Agreement, the "Confidential Information" provision, defendant agreed that, without prior written authorization, he would "not in any manner use any confidential material of [NovaCare] . . . outside of the scope of [his] duties and responsibilities under this Agreement or in any way that is detrimental to [NovaCare]." The Agreement defined "confidential material" as follows:

> [A]ll information in any way concerning the activities, business or affairs of [NovaCare] or any of the customers or clients of [NovaCare], including, without limitation, information concerning trade secrets, together with all sales and financial information concerning [NovaCare] and any and all information concerning projects in research and development or marketing plans for any products or projects of [NovaCare], and all information in any way concerning the activities, business or affairs of any of such customers or clients, which is furnished to the Employee by [NovaCare] or any of its agents, customers or clients, or otherwise acquired by the Employee in the course of [his] employment with [NovaCare]; provided, however, that the term "confidential material" shall not include information which (i) becomes generally available to the public other than as a result of a disclosure by the Employee, (ii) was available to the Employee on a nonconfidential basis prior to his employment with [NovaCare] or (iii) becomes available to the Employee on a non-confidential basis from a source other than [NovaCare] or any of its agents, customers or clients, provided that such source is not bound by a confidentiality agreement with [NovaCare] or any of such agents, customers or clients.

Additionally, under the terms of the "Non-Competition" clause contained in the Agreement, defendant agreed to the following:

[I]n consideration of his employment hereunder, Employee shall not, prior to two (2) years following the date of termination of the Employee's employment by [NovaCare] or any other member of [NovaCare] (i) engage . . . in any activity or business venture, anywhere within 50 miles of [NovaCare's] facilities [in Fayetteville and Lumberton] . . ., which is competitive with the business of [NovaCare] on the date of termination, . . . (iii) solicit or entice or endeavor to solicit or entice away any of the clients or customers of [NovaCare], either on the Employee's own account or for any other person, firm, corporation or organization, . . . or (v) at any time, take any action or make any statement the effect of which would be, directly or indirectly, to impair the good will of [NovaCare] or the business reputation or good name of [NovaCare], or be otherwise detrimental to [NovaCare], including any action or statement intended, directly or indirectly, to benefit a competitor of [NovaCare].

In August of 1998, defendant notified plaintiff of his resignation, which plaintiff accepted effective 19 August 1998. Defendant then joined A.O.P. Inc. ("AOP") at its facility located at 4140 Ferncreek Drive in Fayetteville, North Carolina which was approximately three and one-half miles from his former place of employment with plaintiff. AOP, like plaintiff, is in the business of providing orthotics and prosthetics.

On 20 November 1998, plaintiff filed a complaint against defendant seeking, *inter alia*, injunctive relief restraining him from further breaching the "Confidential Information" and "Non-Competition" provisions of the Agreement. The complaint also alleged that defendant misappropriated plaintiff's trade secrets in violation of the North Carolina Trade Secrets Protection Act ("the Trade Secrets Act"). Based on the averments in the complaint, the trial court entered a temporary restraining order enjoining defendant's allegedly wrongful activities. The court thereafter conducted a hearing on plaintiff's motion for a preliminary injunction and, on 4 December 1998, entered an order denying the motion.

On 8 January 1999, plaintiff served defendant with its first set of interrogatories and simultaneously noticed his deposition for 1 March 1999. Defendant filed "Motions in the Cause" seeking a protective order and asking the court to dismiss plaintiff's action under Rules 12(b)(1) and 12(b)(6) of the Rules of Civil Procedure. The trial court granted defendant's motions to dismiss on 9 March 1999. From the 4 December 1998 order denying its motion for a preliminary injunction

**NOVACARE ORTHOTICS & PROSTHETICS E., INC. v. SPEELMAN**

[137 N.C. App. 471 (2000)]

and from the 9 March 1999 order dismissing its action, plaintiff appeals.

---

**[1]** Plaintiff's first contention is that the trial court improvidently denied its motion for a preliminary injunction because plaintiff demonstrated a likelihood that its cause of action against defendant would succeed on the merits. At the outset, plaintiff argues that the "Non-Competition" covenant contained in the Employment Agreement was valid and enforceable; therefore, the court should have issued an order restraining defendant from further violating its terms. We disagree.

As our Supreme Court recognized in *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 302 S.E.2d 754 (1983),

> [A] preliminary injunction "is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of [its] case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation."

308 N.C. at 401, 302 S.E.2d at 759-60 (quoting *Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977)). Furthermore, "on appeal from an order of [the] superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *Id.* at 402, 302 S.E.2d at 760.

The initial inquiry on a motion for a preliminary injunction is whether the plaintiff has demonstrated a likelihood of success on the merits of its case. *Id.* at 401, 302 S.E.2d at 760. To establish a likelihood of success where an employer seeks a preliminary injunction to enforce a covenant restraining competition, the employer must make a *prima facie* showing that the covenant is valid and enforceable against the employee. *Milner Airco, Inc. v. Morris*, 111 N.C. App. 866, 869, 433 S.E.2d 811, 813 (1993). In North Carolina, an anti-competition clause is valid and enforceable if it is " '(1) in writing, (2) entered into at the time and as part of the contract of employment, (3) based upon reasonable consideration, (4) reasonable both as to time and territory, and (5) not against public policy.' " *Id.* at 869, 433 S.E.2d at 813 (quoting *A.E.P. Industries*, 308 N.C. at 402-03, 302 S.E.2d at 760).

The pivotal question raised in the instant case, however, is whether the covenant against competition applies to defendant under the present set of facts. The covenant states that "the Employee shall not . . . [engage in a competing business] prior to two (2) years following the date of *termination of the Employee's employment by the Employer or any other member of the Company Group*[.]" (emphasis added). Based on this language, defendant takes the position that his resignation did not engage the provisions of the covenant, because the covenant requires that the employment be terminated by NovaCare. Plaintiff, on the other hand, argues that defendant's construction is erroneous and that termination of one's employment with NovaCare, whether by resignation or dismissal, triggers the anti-competition provision. We believe that the language in question is reasonably subject to both interpretations and is, therefore, ambiguous.

A contractual clause is ambiguous if the language used " 'is fairly and reasonably susceptible to either of the constructions asserted by the parties.' " *Barrett Kays & Assoc. v. Colonial Building Co.*, 129 N.C. App. 525, 528, 500 S.E.2d 108, 111 (1998) (quoting *Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996) (citation omitted)). In short, an agreement contains an ambiguity "when the 'writing leaves it uncertain as to what the agreement was[.]' " *Id.* (quoting *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989)). Furthermore, when an ambiguity is present in a written instrument, the court is to construe the ambiguity against the drafter—the party responsible for choosing the questionable language. *Station Assoc. Inc. v. Dare County*, 130 N.C. App. 56, 62, 501 S.E.2d 705, 708 (1998), *rev'd on other grounds*, 350 N.C. 367, 513 S.E.2d 789 (1999).

As demonstrated by the parties' dispute, the previously quoted language of the anti-competition clause is reasonably susceptible to either of the proposed constructions. From the language alone, we cannot say that, as a matter of law, the covenant against competition was triggered when defendant resigned from his employment. Plaintiff argues, nonetheless, that defendant's proposed construction is illogical and, as such, is precluded by this Court's decision in *Market America v. Christman-Orth*, 135 N.C. App. 143, 520 S.E.2d 570 (1999), *disc. review denied*, 351 N.C. 358, —— S.E.2d —— (2000).

In *Market America*, the covenant restraining competition provided that the employee would not "enter into competition with

Market America . . . for a period of six months from [her] written resignation or termination as an Independent Distributor of Market America[.]" *Id.* at 154, 520 S.E.2d at 579. The employee argued that the covenant was factually inapplicable to her, because she had not yet resigned or been terminated from her distributorship with the company when she engaged in the allegedly competitive activity. We rejected this argument, however, stating that in this jurisdiction, a contract " 'encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion.' " *Id.* (quoting *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 569, 500 S.E.2d 752, 755-56, *disc review denied*, 349 N.C. 240, 514 S.E.2d 274 (1998) (citation omitted)). Thus, we concluded that the anti-competition provision was impliedly operative during the employee's distributorship with the company. Because the contract language in *Market America* did not present an ambiguity, but a question as to what terms were included by implication, that decision does not bear on the facts of the instant case. Plaintiff's argument, then, fails. Accordingly, we hold that plaintiff has not made the requisite showing that it is likely to succeed on the merits with respect to the claim seeking enforcement of the covenant.

**[2]** Plaintiff further argues that a preliminary injunction should have issued to prevent defendant from misappropriating the company's "trade secrets" in violation of North Carolina's Trade Secrets Protection Act. Again, we find that plaintiff has failed to establish the likelihood of its ultimate success on the merits regarding this claim.

Section 66-152 of the General Statutes provides the following definitions for "misappropriation" and "trade secret":

(1) "Misappropriation" means acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret.

. . . .

(3) "Trade Secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

   a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable

through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

    b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(1),(3) (1999).

Plaintiff contends that its "customer lists and other compilations of customer data" are protected under section 66-152. Plaintiff further contends that defendant's post-resignation contact with several of the clients he had treated while in plaintiff's employ constituted a misappropriation of the company's trade secrets within the meaning of section 66-152. However, plaintiff has not come forward with any evidence to show that the company took any special precautions to ensure the confidentiality of its customer information. Indeed, any information used to contact the clients would have been easily accessible to defendant through a local telephone book. As for his treatment of their orthotic and prosthetic needs, the evidence suggests that defendant had been treating these particular clients since his employment with HCC. He had developed a personal relationship with them, and one could expect that they would follow him to a competing business. Thus, we conclude that plaintiff has failed to establish likelihood of success on the merits regarding its claim for trade secrets protection, and the trial court was correct in denying plaintiff's motion for a preliminary injunction.

[3] Next, we consider plaintiff's contention that the trial court erred in granting defendant's motion to dismiss plaintiff's claims pursuant to Rule 12(b)(6). Because we conclude that defendant's motion was an application to stay litigation and compel arbitration pursuant to section 1-567.3(a) of the General Statutes, we vacate the order of dismissal and remand this matter to the trial court for further appropriate proceedings.

Under section 1-567.2 of the General Statutes, an agreement to arbitrate is compulsory and irrevocable:

    (a) Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement

or provision shall be valid, enforceable, and irrevocable except with the consent of all the parties, without regard to the justiciable character of the controversy.

N.C. Gen. Stat. § 1-567.2(a) (1999). Section 1-567.3 sets forth the procedure for compelling arbitration:

(a) On application of a party showing an agreement described in G.S. 1-567.2; and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

N.C. Gen. Stat. § 1-567.3(a) (1999).

In the instant case, defendant sought a dismissal based on "the terms and provisions of the parties [sic] Employment Agreement which provides for binding arbitration" as follows:

The parties shall attempt amicably to resolve disagreements by negotiating with each other. In the event that the matter is not amicably resolved through negotiation, any controversy, dispute or disagreement arising out of or relating to this Agreement (a "Controversy") shall be settled exclusively by binding arbitration[.]

Defendant's motion is one " 'showing' an agreement described in G.S. 1-567.2," *id.*, and, as such, constitutes an application for arbitration within the meaning of section 1-567.3(a). *Cf. Adams v. Nelsen*, 313 N.C. 442, 447, 329 S.E.2d 322, 325 (1985) (holding that "motion to dismiss, which conspicuously omitted any reference to an arbitration agreement, was not the proper method to stay litigation and compel arbitration," as it was not "a motion 'showing' an agreement to arbitrate" under section 1-567.3). Therefore, the trial court was required to conduct the appropriate inquiry and enter an order compelling or denying arbitration. Given our decision in this regard, we need not address plaintiff's remaining arguments.

For the foregoing reasons, we affirm the order denying plaintiff's motion for injunctive relief. The order of dismissal, however, is vacated and this matter remanded to the Superior Court, Cumberland County, for further proceedings consistent with this opinion.

CALLOWAY v. MEMORIAL MISSION HOSP.

[137 N.C. App. 480 (2000)]

Affirmed in part, vacated in part, and remanded.

Judges GREENE and WALKER concur.