COMBS & ASSOCIATES, INC., Plaintiff v. CURTIS KENNEDY, DONALD MILLER, CAROLINA ENVIRONMENTAL TECHNOLOGIES, LLC, and AMERICAN SIGMA, INC., Defendants

No. COA00-1068

(Filed 4 December 2001)

**1. Appeal and Error— appealability—partial summary judgment—voluntary dismissal of remaining claim**

The trial court did not err by denying defendant former employee's motion to dismiss plaintiff company's appeal on the issue of breach of employee duty of loyalty even though defendant contends the trial court's order is interlocutory based on the trial court's grant of only partial summary judgment regarding defendant, because plaintiff voluntarily dismissed the claim which survived summary judgment, making the trial court's grant of partial summary judgment a final order.

**2. Trade Secrets— misappropriation of trade secrets—sales forecasting information—customer database—territory review summary form**

The trial court did not err by granting summary judgment in favor of defendants on a claim for misappropriation of trade secrets, because: (1) the 6 November 1998 e-mail sent by defendant former employee to defendant business competitor containing sales forecasting information was either already possessed by defendant company or could have easily been compiled from its business records, and plaintiff's president provided this identical information in a 29 January 1999 letter to defendant company; (2) the customer database stored on defendant employee's computer could have been compiled by defendants through public listings such as trade show and seminar attendance lists; and (3) the territory review summary was a form which defendant company had provided to its southeast sales representatives including plaintiff.

**3. Wrongful Interference— tortious interference with contract—enticement and hiring of an at-will employee by a competing company**

The trial court did not err by granting summary judgment in favor of defendants on a claim for tortious interference with a contract based on defendant company and defendant business competitor allegedly interfering with defendant former em-

ployee's employment by inducing the employee to compete directly with plaintiff company, because: (1) plaintiff company fails to provide any evidence that either defendant company or defendant business competitor had knowledge of the terms of the policies and rules that formed the basis for a contractual relationship between defendant former employee and plaintiff, or that either intentionally induced defendant former employee to breach this contractual relationship; (2) the mere enticement and hiring of an at-will employee by a competing company, absent an improper motive, does not give rise to a tortious interference with a contract claim; and (3) the evidence in the light most favorable to plaintiff shows that both defendant company and defendant business competitor acted under legitimate business motives.

4. **Wrongful Interference— tortious interference with contract—cancellation of exclusive representation contract**

The trial court did not err by granting summary judgment in favor of defendants on a claim for tortious interference with a contract based on defendant former employee and defendant business competitor allegedly interfering with plaintiff company's exclusive representation contract with defendant company by inducing defendant company to cancel its contract, because: (1) there is no evidence that defendant business competitor acted maliciously or with a bad motive in his effort to compete with plaintiff company for defendant company's business; (2) our state does not recognize an independent tort for breach of duty of loyalty by an at-will employee absent evidence of a fiduciary relationship, and plaintiff failed to present evidence that it held a fiduciary relationship with defendant former employee; and (3) the two actions cited by plaintiff in support of its claim were actions by either defendant business competitor or defendant new business and are not directly attributable to defendant employee.

5. **Conspiracy— civil—termination of exclusive representation contract**

The trial court did not err by granting summary judgment in favor of defendants on a claim for civil conspiracy based on defendant company's termination of its exclusive representation contract with plaintiff company, because: (1) the fact that defendant company may have agreed with the individual defendants that their company, yet to be formed, would eventually replace plain-

tiff does not by itself demonstrate that defendants acted unlawfully; and (2) defendant company's effort to secure an alternative representative prior to the exercise of a 30-day termination clause is a sound business practice.

6. **Unfair Trade Practices— misappropriation of trade secrets—tortious interference with contracts—civil conspiracy**

The trial court did not err by granting summary judgment in favor of defendants on a claim for unfair and deceptive trade practices based on plaintiff's claims for misappropriation of trade secrets, tortious interference with contracts, and civil conspiracy, because the trial court properly granted summary judgment on each of these claims meaning that no claim for unfair and deceptive trade practices exists.

7. **Damages— punitive—liability for compensatory damages required**

The trial court did not err by granting summary judgment in favor of defendants on a claim for punitive damages under N.C.G.S. § 1D-15(a), because: (1) punitive damages may only be awarded if a claimant proves that defendant is liable for compensatory damages and that defendant is guilty of fraud, malice, or willful or wanton conduct; and (2) the trial court properly granted summary judgment in favor of defendants on plaintiff's claims for misappropriation of trade secrets, tortious interference with contracts, civil conspiracy, and unfair and deceptive trade practices.

Appeal by plaintiff from order granting partial summary judgment entered 27 April 2000 by Judge Timothy L. Patti in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 September 2001.

*Van Hoy, Reutlinger & Adams, by Stephen J. Dunn and Philip M. Van Hoy, for plaintiff-appellant.*

*No brief filed by defendants-appellees Curtis Kennedy and Carolina Environmental Technologies, LLC.*

*Caudle & Spears, PA, by Harold C. Spears and Christopher J. Loebsack, for defendant-appellee Donald Miller.*

*Roseman & Colin, LLP, by Richard L. Farley, for defendant-appellee American Sigma, Inc.*

**COMBS & ASSOCS. v. KENNEDY**

[147 N.C. App. 362 (2001)]

WALKER, Judge.

Plaintiff initiated this action against defendants on 26 January 1999. In its amended complaint, plaintiff presents claims for misappropriation of trade secrets, two counts of tortious interference with a contract, defamation, breach of employee duty of loyalty, unfair and deceptive trade practices, civil conspiracy and punitive damages. Following discovery, plaintiff moved for summary judgment against defendant Curtis Kennedy (Kennedy) for the breach of employee duty of loyalty claim and against all defendants on the civil conspiracy claim. All defendants moved for summary judgment on all claims. Defendant American Sigma, Inc. (Sigma) also moved to strike certain exhibits which plaintiff submitted with its motion for summary judgment. After receiving arguments and reviewing the record over the course of three hearings, the trial court denied plaintiff's motion for summary judgment, Sigma's motion to strike, and Kennedy's motion for summary judgment with regard to the breach of employee duty of loyalty claim against him. However, the trial court granted defendants' summary judgment motion on all remaining claims. Plaintiff then voluntarily dismissed without prejudice its surviving claim against Kennedy.

The relevant facts as presented by the record may be summarized as follows: Plaintiff is a corporation which provides sales representation for manufacturers of water and wastewater equipment and processes. Sigma is a subsidiary corporation of Danaher, Inc. and manufactures water and wastewater equipment. In May of 1994, plaintiff and Sigma entered into a contract wherein Sigma appointed plaintiff as its exclusive sales representative for North Carolina, South Carolina and Virginia. The parties renewed the contract in April of 1997. Each contract included a clause giving either party the right to terminate the contract by serving the other written notice within thirty (30) days. The contracts also contained a provision in which plaintiff agreed to keep Sigma informed as to its sales activities within its assigned territory.

Kennedy began working for plaintiff as a salesperson on 18 April 1994. On this date, he signed a statement indicating that he had reviewed plaintiff's "Policies and Rules" which contained provisions requiring employees to devote all of their "time, attention, knowledge, and skills solely" to plaintiff's business. The "Policies and Rules" also prohibited employees from imparting to outsiders information relative to plaintiff's business affairs. Kennedy's job responsibilities included the selling of Sigma's products.

Around August of 1998, Kennedy approached Donald Miller (Miller) and suggested the possibility of their forming a new manufacturers' sales representative company. Miller had worked for Sigma in various sales and business development positions since January 1983 but had resigned his employment effective 14 August 1998. At that time, Miller remained undecided as to his future plans; however, by mid-September both he and Kennedy had committed to the idea of their forming a new company—Carolina Environmental Technologies, LLC (CET). Throughout the next several weeks, they exchanged e-mails in which they discussed preliminary plans for launching CET. These plans involved setting up an office in Kennedy's home, attending a water and wastewater industry association conference, and identifying potential clients. The list of potential clients included Sigma. On 5 November 1998, they incorporated CET with Kennedy as the registered agent. However, Kennedy did not resign from plaintiff's employ until 7 December 1998.

Meanwhile, as part of its subsidiary relationship with Danaher Inc., Sigma had begun to implement various management techniques designed to increase growth of its business. In early 1998, Sigma's Regional Sales Manager, James Heuer (Heuer), created a "Rep Plan" for each sales representative, including plaintiff. The "Rep Plan" provided plaintiff with sales goals and "action items" to assist plaintiff in achieving the goals within its territory. However, by May of 1998, Sigma had concluded that plaintiff was not going to achieve increased sales, unless it increased its representation activities. One month later, Sigma's President, Richard Wissenbach (Wissenbach), assigned Susan McHugh (McHugh) as the Regional Manager for plaintiff's territory and instructed her to increase sales and Sigma's market share. Over the next two months, McHugh met once with plaintiff and reached the conclusion that plaintiff "did not appear to be motivated to improve sales and increase Sigma's market share in the [t]erritory." Consequently, during the fall of 1998, McHugh and Sigma's sales director, Todd Garber (Garber), began to re-evaluate plaintiff's representation of Sigma and considered finding a replacement.

In late September of 1998, Miller approached Garber to discuss the possibility of having CET represent its products in the Carolinas. Following this discussion and after CET was incorporated, CET developed a "Sales Action Plan" in which it identified key markets for Sigma products and outlined a business strategy time line for 1999. This plan was submitted to Sigma on 12 November 1998. In the meantime, McHugh, Garber and Wissenbach met with plaintiff's President,

**COMBS & ASSOCS. v. KENNEDY**

[147 N.C. App. 362 (2001)]

Tony Combs, regarding the lack of growth in Sigma's sales within plaintiff's territory. Subsequent to this meeting, McHugh prepared a memorandum dated 23 November 1998 and titled "Justification to Replace Representation in North Carolina/South Carolina/Virginia Territory" (McHugh memorandum). In the memorandum, McHugh pointed out that plaintiff's year-to-date sales were $668,000 against an annual target of $1.1 million and that plaintiff's sales of Sigma products had shown a zero growth rate over a three-year period. McHugh also stated that plaintiff had experienced an attrition rate in employees with "[t]he most recent vacancy [being] confirmed 12/7/98 by the resignation of Comb's key North & South Carolina salesman." As a result of the factors summarized in this memorandum, Sigma notified plaintiff on 21 December 1998 of its intention to exercise the termination clause of their contract effective January 1999.

Plaintiff appeals the trial court's grant of summary judgment with respect to defendants Sigma, Kennedy and Miller. Sigma cross-assigns as error the trial court's denial of its motion to strike certain exhibits submitted by plaintiff. Finally, Kennedy filed a motion to dismiss plaintiff's appeal as interlocutory.

[1] We first address defendant Kennedy's motion to dismiss plaintiff's appeal. Kennedy contends that, because the trial court granted only a partial summary judgment as to him, the trial court's order is interlocutory and therefore is not immediately appealable.

Ordinarily, an appeal from an order granting summary judgment to fewer than all of a plaintiff's claim is premature and subject to dismissal. *See Mozingo v. North Carolina Nat'l Bank*, 27 N.C. App. 196, 218 S.E.2d 506 (1975). However, since the plaintiff here voluntarily dismissed the claim which survived summary judgment, any rationale for dismissing the appeal fails. Plaintiff's voluntary dismissal of this remaining claim does not make the appeal premature but rather has the effect of making the trial court's grant of partial summary judgment a final order. *See General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1040 (6th Cir. 1990) (finding plaintiff's voluntary dismissal of its sole remaining claim after trial court granted partial summary judgment in favor of defendant on all other claims made order final under Fed. R. Civ. P. 54(b), permitting an immediate appeal). Thus, the order is no longer interlocutory in nature and an appeal is permissible.

This view comports with the procedural posture of appeals this Court has initially dismissed as being interlocutory and then subse-

quently heard on appeal following voluntary dismissals. In *Whitford v. Gaskill*, 119 N.C. App. 790, 460 S.E.2d 346 (1995), *reversed on other grounds*, 345 N.C. 475, 480 S.E.2d 690 (1997), the trial court granted partial summary judgment in plaintiff's favor. *Whitford*, 119 N.C. App. at 791, 460 S.E.2d at 347. The defendant appealed and this Court dismissed the appeal as interlocutory because no damages had been determined. On remand, the plaintiff voluntarily dismissed her claim for damages. This Court then allowed the defendant's renewed appeal of the trial court's summary judgment order. *Id.* at 792, 460 S.E.2d at 347. Similarly, in *Berkeley Federal Savings Bank v. Terra Del Sol, Inc.*, 119 N.C. App. 249, 457 S.E.2d 736 (1995), *disc. rev. denied*, 342 N.C. 639, 466 S.E.2d 276 (1996), the trial court granted the plaintiff summary judgment on some of its claims and all of defendants' counterclaims. *Berkeley Federal*, 119 N.C. App. at 250, 457 S.E.2d at 736. This Court initially dismissed defendants' appeal as interlocutory, only to allow the appeal following plaintiff's voluntary dismissal of its remaining claims. *See Id.*

Turning to the substantive issues, plaintiff assigns as error the trial court's grant of defendants' motion for summary judgment, arguing there were genuine issues of material fact regarding its claims for misappropriation of trade secrets, tortious interference with a contract, civil conspiracy, unfair and deceptive trade practices, and punitive damages.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999); *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266 S.E.2d 610 (1980), *overruled on other grounds by Myers & Chapman, Inc., v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Because summary judgment supplants trial of the factual issues, all the evidence is viewed in the light most favorable to the nonmoving party. *See Coats v. Jones*, 63 N.C. App. 151, 303 S.E.2d 655, *affirmed*, 309 N.C. 815, 309 S.E.2d 253 (1983). The burden of proving the absence of any genuine issue of material fact rests with the movant. *Holley v. Burroughs Wellcome Co.*, 318 N.C. 352, 348 S.E.2d 772 (1986).

## I. Misappropriation of Trade Secrets

[2] Plaintiff first argues that a factual issue exists regarding its claim for misappropriation of trade secrets. The law of this State gives the

owner of a trade secret a cause of action and remedy for its misappropriation. N.C. Gen. Stat. § 66-152 *et seq.* (1999). The burden of proof initially rests with the owner who must establish a *prima facie* case of misappropriation by introducing substantial evidence that the person against whom relief is sought:

(1) knows or should have known of the trade secret; and

(2) has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.

N.C. Gen. Stat. § 66-155 (1999). Once the owner establishes a *prima facie* case, the burden of proof shifts to the defendant who may rebut the allegation by introducing substantial evidence that the trade secret was acquired through "independent development, reverse engineering, or . . . was obtained from another person with a right to disclose the trade secret." *Id.; see also Byrd's Lawn & Landscaping, Inc. v. Smith,* 142 N.C. App. 371, 376, 542 S.E.2d 689, 693 (2001).

The threshold question in any misappropriation of trade secrets case is whether the information obtained constitutes a trade secret which is defined as:

[B]usiness or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3) (1999). From this statutory definition, our courts have fashioned six factors which are to be considered when determining whether information is a trade secret:

(1) the extent to which the information is known outside the business;

(2) the extent to which it is known to employees and others involved in the business;

(3) the extent of measures taken to guard the secrecy of the information;

(4) the value of information to business and its competitors;

(5) the amount of effort or money expended in developing the information; and

(6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*State ex rel Utilities Comm'n v. MCI*, 132 N.C. App. 625, 634, 514 S.E.2d 276, 282 (1999) (*citing Wilmington Star News v. New Hanover Regional Medical Center*, 125 N.C. App. 174, 180-81, 480 S.E.2d 53, 56, *appeal dismissed*, 346 N.C. 557, 488 S.E.2d 826 (1997)).

Here, plaintiff contends the following information constitutes three trade secrets: (1) the contents of a 6 November 1998 e-mail sent by Kennedy to Miller, (2) a customer database stored on a computer which Kennedy used during his employment with plaintiff, and (3) a "Territory Review Summary." We disagree.

First, the 6 November 1998 e-mail sent by Kennedy to Miller contains sales forecasting information which identifies existing customers for Sigma's products along with the names of prospective customers within plaintiff's territory. However, the record shows that Sigma either already possessed this information or could have easily compiled it from its business records. Moreover, plaintiff's president provided this identical information in a 29 January 1999 letter to Sigma. Consequently, the information was not subject to reasonable efforts to maintain its secrecy. *See Glaxo Inc. v. Novopharm Ltd.*, 931 F. Supp. 1280 (E.D.N.C. 1996), *affirmed*, 110 F.3d 1562 (4th Cir. 1997). Second, regarding the customer database stored on Kennedy's computer, the record shows that defendants could have compiled a similar database through public listings such as trade show and seminar attendance lists. *See Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 478, 528 S.E.2d 918, 922 (2000) (holding customer lists were not considered "trade secrets" where information would have been easily accessible through a local telephone book). Finally, the "Territory Review Summary" was a form which Sigma had provided to its southeast sales representatives, including plaintiff. The form included space for plaintiff to furnish certain information concerning plaintiff's sales activities within the territory. The terms of the exclusive representation agreement contractually obligated plaintiff to provide this information to Sigma.

After applying the six factors set forth in *Wilmington Star News*, we conclude the information identified by plaintiff does not constitute trade secrets. Thus, the trial court properly granted defendants' motion for summary judgment on plaintiff's claim for misappropriation of trade secrets.

## II. Tortious Interference with a Contract

Plaintiff next argues that factual issues exist with respect to each of its two counts for tortious interference with a contract. In order to maintain an action for tortious interference with a contract, a plaintiff must show: (1) a valid contract between the plaintiff and a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant's inducement is unjustified and (5) actual damages to the plaintiff. *See United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (*citing Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954)).

### A. Kennedy's Employment with Plaintiff

[3] Plaintiff's first count claims Sigma and Miller tortiously interfered with Kennedy's employment by inducing Kennedy to compete directly with plaintiff. Specifically, plaintiff contends that its employment relationship with Kennedy was subject to the provisions in its "Policies and Rules" which prohibited an employee from disclosing information relevant to its business affairs and required the employee to devote all of his "time, attention, knowledge, and skills solely" to its "business and interests." Assuming that these "Policies and Rules" form the basis of a contractual relationship between Kennedy and plaintiff, plaintiff fails to provide any evidence that either Sigma or Miller had knowledge of the terms or intentionally induced Kennedy to breach this contractual relationship. Moreover, our Supreme Court has held that the mere enticement and hiring of an at-will employee by a competing company, absent an improper motive, does not give rise to a tortious interference with a contract claim. *See Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216, 222-23, 367 S.E.2d 647, 650-51 (1988) (*citing Childress*, 240 N.C. at 678-79, 84 S.E.2d at 184). Here, the evidence in the light most favorable to plaintiff shows that both Sigma and Miller acted under legitimate business motives: Sigma wanted to increase sales of its products and Miller desired to establish a competing business. *See Id.; see also Pleasant Valley Promenade v. Lechmere*, 120 N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995). Thus, we conclude that plaintiff has failed to present facts

that would raise an issue of whether Sigma or Miller tortiously interfered in plaintiff's employment relationship with Kennedy.

### B.  Plaintiff—Sigma Exclusive Representation Contract

[4] Plaintiff's second claim is that Miller and Kennedy tortiously interfered with its exclusive representation contract with Sigma by inducing Sigma to cancel the contract. In support of this claim, plaintiff points to two specific actions of Miller and Kennedy: (1) a 23 October 1998 letter from Miller to Sigma, and (2) the Sales Action Plan which CET submitted to Sigma on 12 November 1998. On each of these dates, Miller and Kennedy had a different relationship with the plaintiff; i.e. Miller as a potential competitor and Kennedy as an employee. Therefore, we review plaintiff's claim as to each defendant in these different contexts.

Where the circumstances surrounding a tortious interference claim involve a business competitor, the party asserting the claim must show that the competitor acted with malice or a bad motive. *Childress*, 240 N.C. at 675, 84 S.E.2d at 182. Plaintiff concedes that Miller was free to compete for Sigma's representation. However, plaintiff argues that Miller acted unlawfully by enticing Kennedy to breach his employee "duty of loyalty" and by misappropriating plaintiff's trade secrets. We have already concluded that no factual issue exists with respect to either plaintiff's misappropriation of trade secrets claim or plaintiff's claim against Miller for tortiously interfering with Kennedy's employment relationship. Thus, we find no merit in plaintiff's claim that Miller acted maliciously or with a bad motive in his effort to compete with plaintiff for Sigma's business.

Next, plaintiff argues that Kennedy's interference with its contract with Sigma was unjustified because it involved the breach of his "fiduciary duty of loyalty" to plaintiff. Our Supreme Court has recently addressed the issue of an at-will employee's duty of loyalty to his employer in the context of starting a competing company. *See Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704 (2001). In *Dalton*, the Court held that, outside the purview of a fiduciary relationship, our State does not recognize an independent tort for breach of duty of loyalty by an at-will employee. *Id.* at 652, 548 S.E.2d at 708. Plaintiff presents no evidence that it held a fiduciary relationship with Kennedy. Indeed, a review of plaintiff's "Policies and Rules" in the context of its breach of loyalty claim against Kennedy strongly suggests the absence of such a relationship. Finally, the two actions cited by plaintiff in support of its claim were actions by either Miller or

CET and are not directly attributable to Kennedy. Accordingly, we find no factual issue exists regarding plaintiff's contention that Kennedy, by breaching his duty of loyalty, unjustifiably interfered with its exclusive representation contract with Sigma.

### III. Civil Conspiracy

**[5]** In its next assignment of error, plaintiff argues the trial court erred in granting summary judgment on its claim for civil conspiracy.

A claim for civil conspiracy "requires the showing of an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damages to the claimant." *Dalton v. Camp*, 138 N.C. App. 201, 213, 531 S.E.2d 258, 266 (2000), *reversed on other grounds*, 353 N.C. 647, 548 S.E.2d 704 (2001); *see also Pleasant Valley Promenade*, 120 N.C. App. at 657, 464 S.E.2d at 54.

The essence of plaintiff's civil conspiracy claim is that although Sigma could lawfully terminate its exclusive representation, the manner in which defendants went about this termination was unlawful. In light of our previous discussion we find no basis for this contention.

Plaintiff suggests that the inconsistent dates in the McHugh memorandum show that defendants had agreed amongst themselves to replace plaintiff with CET months in advance of Sigma's termination notice. However, the fact that Sigma may have agreed with Miller and Kennedy that their company, yet to be formed, would eventually replace plaintiff does not by itself demonstrate that the defendants acted unlawfully. Indeed, Sigma's effort to secure an alternative representative prior to the exercise of a 30-day termination clause, appears to us to be a sound business practice. *See Tar Heel Industries v. E.I. duPont de Nemours*, 91 N.C. App. 51, 56-57, 370 S.E.2d 449, 452 (1988) (holding that a company's efforts to seek alternatives to plaintiff's contract prior to the exercise of a termination clause did not constitute an unfair and deceptive trade practice). We conclude the evidence clearly demonstrates that Sigma made an operational decision in exercising its contractual right to terminate its relationship with plaintiff. Therefore, we overrule this assignment of error.

### IV. Unfair and Deceptive Trade Practices

**[6]** Plaintiff next contends its claim for unfair and deceptive trade practices should have survived summary judgment. To prevail on a

Chapter 75 unfair and deceptive trade practices claim, a plaintiff must show: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or effecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Dalton*, 138 N.C. App. at 209, 531 S.E.2d at 264 (*quoting Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996), *disc. rev. denied*, 345 N.C. 344, 483 S.E.2d 173 (1997)). A trade practice is considered unfair when it offends established public policy because it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious" to consumers. *Process Components, Inc. v. Baltimore Aircoil Co.*, 89 N.C. App. 649, 654, 366 S.E.2d 907, 911, *affirmed*, 323 N.C. 620, 374 S.E.2d 116 (1988). A trade practice is deceptive if it "has the capacity or tendency to deceive." *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 924 (1998) (citation omitted).

Here, plaintiff's claim that defendants engaged in unfair and deceptive trade practices rests with its claims for misappropriation of trade secrets, tortious interference with contracts and civil conspiracy. Having determined that the trial court properly granted summary judgment on each of these claims, we likewise conclude that no claim for unfair and deceptive trade practices exists.

## V. Punitive Damages

[7] Finally, plaintiff alleges a claim for punitive damages. Pursuant to our statutes, punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a) (1999).

We have already concluded that the trial court properly granted defendants' summary judgment on plaintiff's claims for misappropriation of trade secrets, tortious interference with contracts, civil conspiracy and unfair and deceptive trade practices. Accordingly, we find no merit to plaintiff's claim for punitive damages.

Having found no factual issue with respect to each of plaintiff's claims for compensatory and punitive damages and in light of the fact plaintiff has taken a voluntary dismissal with respect to its remaining claim against Kennedy, we conclude the trial court properly granted summary judgment for the defendants.

In sum, we deny defendant Kennedy's motion to dismiss plaintiff's appeal as interlocutory. The trial court's grant of summary judg-

EDDINGS v. SOUTHERN ORTHOPEDIC & MUSCULOSKELETAL ASSOCS., P.A.

[147 N.C. App. 375 (2001)]

ment for defendants is affirmed. Therefore, we do not address Sigma's cross-assignment of error.

Affirmed.

Judges McGEE and HUDSON concur.