Treece v. Advisors Excel, LLC, 2026 NCBC 26.

STATE OF NORTH CAROLINA

CABARRUS COUNTY

CHARLES ANTHONY TREECE,

Plaintiff,

v.

ADVISORS EXCEL, LLC,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV007146-120

**ORDER AND OPINION
ON DEFENDANT'S MOTION
TO DISMISS**

1. This matter is before the Court on the Rule 12(b)(6) motion to dismiss filed by defendant Advisors Excel, LLC, which seeks dismissal of all causes of action asserted by plaintiff Charles Anthony Treece in this action. (ECF No. 11).

2. The parties have fully briefed the motion, (ECF Nos. 12, 13, and 14), and the Court dispenses with oral argument pursuant to Rule 7.4 of the Business Court Rules.

3. Having considered the complaint and the written arguments of counsel, the Court hereby **GRANTS** the motion to dismiss and **DISMISSES** Plaintiff's causes of action for the reasons set forth in this Order and Opinion.

*McTier Law, by Ty McTier, for Plaintiff Charles Anthony Treece.*

*Lord & Lindley, PLLC, by Trey Lindley, for Defendant Advisors Excel, LLC.*

Houston, Judge.

## I.    BACKGROUND

4. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. Instead, for background, the Court summarizes the complaint's factual

allegations that are most relevant to the Court's decision and accepts the well-pleaded factual allegations as true for purposes of this Order and Opinion.

5. Plaintiff is a citizen and resident of Cabarrus County, North Carolina, who previously owned a "Financial Advising Firm." (ECF No. 8, ¶¶ 1, 4).[1]

6. Defendant is a Kansas-based limited liability company. (ECF No. 8, ¶ 2).

7. Though the nature of Defendant's business is unspecified, around the spring of 2024, Plaintiff negotiated the sale of his firm "through one of [Defendant's] platforms." (ECF No. 8, ¶ 4).

8. Defendant's policy at that time was that it would not share personal information concerning Plaintiff's clients without his knowledge and permission. (ECF No. 8, ¶ 5). Plaintiff does not, however, directly allege that he shared a client list with Defendant or even that he uploaded it to one of Defendant's "platforms" on which he otherwise negotiated the sale of his firm.

9. Nonetheless, in April 2024, non-party Jacob Tolley approached Plaintiff with his laptop and displayed Plaintiff's "full client list" on the laptop. (ECF No. 8, ¶ 6). Tolley's relationship to the parties is unspecified, though he was not employed by, or an owner of, Defendant and "never would have had access to [Plaintiff's] clients." (ECF No. 8, ¶ 9).

10. Plaintiff alleges, upon information and belief, that Tolley knew "key employees at Advisors Excel" and, in turn, passively asserts that Tolley "was

---

[1] Plaintiff's complaint is filed on the Court's docket at both ECF No. 3 and ECF No. 8, with both documents appearing to be the same document in substance. Accordingly, for ease of reference, the Court cites to ECF No. 8.

improperly given the Client List." (ECF No. 8, ¶ 7). Plaintiff does not specify whom he believes actively provided the list to Tolley and instead conclusorily asserts that Tolley "could have been one of many" people to whom his client list was purportedly disclosed. (ECF No. 8, ¶¶ 7–8).

11. As a result, Plaintiff sold his firm and related client list for what he contends was "far less than the true value[.]" (ECF No. 8, ¶ 9).

12. Plaintiff filed suit on 9 September 2025, asserting causes of action for (i) misappropriation of trade secrets and (ii) unfair or deceptive trade practices under Chapter 75 of the North Carolina General Statutes. (ECF No. 8, ¶¶ 10–21). In support of these causes of action, Plaintiff asserts in a conclusory fashion that the client list was "a trade secret that [he] protected vigilantly," that he did not give Defendant permission to share the list, and that Defendant willfully, maliciously, and "in conscious disregard of Plaintiff's rights" misappropriated the list. (ECF No. 8, ¶¶ 11–16). Further, Plaintiff claims that Defendant "engaged in unfair and deceptive trade practices by misappropriating confidential information, records, and Plaintiff's book of clients." (ECF No. 8, ¶ 18).

13. In turn, Defendant moved to dismiss the complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (ECF Nos. 12, 13, and 14).

## II.   ANALYSIS

14. When considering a Rule 12(b)(6) motion, the Court treats the limited well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C.

326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted); *Forsyth Mem'l Hosp. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994).

15.     With respect to Plaintiff's misappropriation of trade secrets cause of action, Defendant contends that Plaintiff has failed to plead (i) misappropriation of trade secrets with the requisite particularity, (ii) facts alleging that the client list contained information not readily accessible to Defendant, (iii) facts demonstrating reasonable efforts to maintain the client list as secret, and (iv) facts demonstrating misappropriation by Defendant. (ECF No. 12 at 4–10).

16.     Further, Defendant asserts that Plaintiff's cause of action for alleged violations of Chapter 75 fails because it is premised entirely on the deficient misappropriation of trade secrets cause of action. (ECF No. 12 at 10).

A.  **Misappropriation of Trade Secrets**

17.     In his complaint, Plaintiff does not refer to a particular statute or other basis in support of a misappropriation of trade secrets claim. (*See generally* ECF No. 8). In his brief, however, Plaintiff clarifies that this cause of action is premised on alleged violations of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, *et seq.* (ECF No. 13 at 4–7).

18. To state a claim for misappropriation of trade secrets under that statute, a plaintiff must allege that the defendant (i) "[k]nows or should have known of the trade secret," and (ii) "[h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." *Krawiec v. Manly*, 370 N.C. 602, 608–09 (2018) (quoting N.C. Gen. Stat. § 66-155 (internal quotation marks omitted)).

19. A trade secret is defined as

> business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3).

20. In deciding whether information constitutes a trade secret, courts consider

> (1) [t]he extent to which [the] information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard secrecy of the information; ([4]) the value of information to [the] business and its competitors; ([5]) the amount of effort or money expended in developing the information; and ([6]) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 270, 278 (2019) (quoting *Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.*, 125 N.C. App. 174, 180–81 (1997) (alterations in original)).

21. Generally, a plaintiff must "identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec,* 370 N.C. at 609–10 (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326 (2008)).

22. Further, the complaint must "set forth with sufficient specificity the acts by which the alleged misappropriation occurred." *Wells Fargo,* 372 N.C. at 279 (internal citation omitted).

23. "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets." *Krawiec,* 370 N.C. at 610 (internal quotations and quotation marks omitted).

24. While "information regarding customer lists . . . *can* qualify as a trade secret under [the Act], such is the case only to the extent that the information is not 'generally known or readily ascertainable through independent development or reverse engineering.'" *Sterling Title Co. v. Martin*, 266 N.C. App. 593, 602 (2019) (emphasis added) (quoting N.C. Gen. Stat. § 66-152(3)(a)) (internal citations omitted).

25. "[T]here is no presumption that a thing is a secret," such that the plaintiff must adequately plead facts to demonstrate efforts to maintain the confidentiality of a purported trade secret. *Krawiec*, 370 N.C. at 611 (citation omitted) (determining that a trade secret had not been adequately pled "because plaintiffs failed to allege that the lists contained any information that would not be readily accessible to defendants").

26. "Without any allegations of reasonable efforts to maintain secrecy, the mere assertion that the [alleged trade secrets] were kept confidential is not enough to withstand a 12(b)(6) motion to dismiss." *Thortex, Inc. v. Std. Dyes, Inc.*, 2006 N.C. App. LEXIS 1171, at *10 (June 6, 2006) (unpublished); *see also Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 478 (2000) (determining that the secrecy requirement was not met where there was no showing that "the company took any special precautions to ensure the confidentiality of its customer information").

27. In this case, Plaintiff's allegations are almost entirely conclusory in nature. In essence, Plaintiff asserts that he negotiated a sale of his firm via Defendant's platform, that Defendant maintained a policy that his information would not be shared without permission, that (upon information and belief) Tolley "knew" people at Defendant's business, and that Tolley "was given" the client list by an unspecified person (not specifically at Defendant's business). (ECF No. 8, ¶¶ 4–16).

28.     Plaintiff never clearly asserts that he even shared his client list with Defendant or that he uploaded it to Defendant's (unidentified) platform. (*See generally* ECF No. 8).

29.     Plaintiff never specifies the substance or contents of the "Client List," asserting simply that it was "Mr. Treece's full client list." (ECF No. 8, ¶ 6). Plaintiff does not assert—even in vague or generic terms—that the list contained information of any specific type, such as names, telephone numbers, addresses, types of services rendered, pricing terms, or other contractual information. (*See generally* ECF No. 8).

30.     Plaintiff fails to directly assert that Defendant or Defendant's employees shared the client list with Tolley, instead phrasing the allegation in a passive manner—i.e., not that Defendant or its employees affirmatively *gave* the list to Tolley or shared it with him but that Tolley passively "was given" the client list by an unspecified person. (ECF No. 8, ¶ 7); N.C. Gen. Stat. § 66-152(1) (defining misappropriation as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent"); *M.D. Claims Grp., LLC v. Bagley*, 2025 NCBC LEXIS 5, at *20 (N.C. Super. Ct., Jan. 22, 2025) ("Just as a trade secret must be identified with particularity and cannot be pled in generalities, conclusory allegations of misappropriation are insufficient."); *see also Wells Fargo,* 372 N.C. at 279.

31.     Plaintiff's complaint further fails to plead any non-conclusory, factual allegations suggesting that the client list (i) derived any "independent actual or

potential commercial value from not being generally known or readily ascertainable," or (ii) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66-152(3).

32. Plaintiff asserts in conclusory fashion that the client list is a "confidential Client List" that "was a trade secret," (ECF No. 8, ¶ 11), and provides no more substantive information than that. Such perfunctory allegations are insufficient to state a claim. *See Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *68–69 (N.C. Super. Ct. Nov. 3, 2011) (holding that alleged trade secrets described in plaintiff's complaint as "proprietary formulas, methodologies, customer and pricing data and other confidential information" were "sweeping and conclusory"); *see Aecom Tech Corp. v. Keating*, 2012 NCBC LEXIS 9, at *8 (N.C. Super. Ct. Feb. 6, 2012) (holding that "confidential information" described in the complaint as "customer lists, customer contract information, pricing information and product information" failed to identify trade secrets sufficiently).

33. Similarly, though Plaintiff contends that he "protected [the list] vigilantly," there are no facts describing how he did so, nor are there facts describing what, if anything, allegedly made the list confidential—much less a putative trade secret with independent value—such that the information would not otherwise be readily accessible to Defendant. *See Krawiec*, 370 N.C. at 611. Thus, the complaint is fatally deficient in this respect. *See Novacare*, 137 N.C. App. at 478; *Thortex,* 2006 N.C. App. LEXIS 1171, at *10.

34. In short, Plaintiff's substance-free and otherwise conclusory allegations fail to meet the pleading requirements to state a claim for misappropriation of trade secrets, and the Court therefore **GRANTS** Defendant's motion and **DISMISSES WITH PREJUDICE** this cause of action.

## B. Violation of N.C. Gen. Stat. § 75–1.1 *et seq.*

35. To state a claim for relief under Chapter 75 of the North Carolina General Statutes for alleged unfair or deceptive conduct, "a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *McKinnon v. CV Indus.*, 213 N.C. App. 328, 340 (2011) (citations omitted).

36. Misappropriation of trade secrets generally constitutes an unfair act or practice under Chapter 75. *See Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 660 (2009).

37. However, "North Carolina courts have previously concluded that when the UDTP claim rests solely upon other claims [that] . . . the court determines should be dismissed, the UDTP claim must fail as well." *Charah, LLC v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 52, at *19 (N.C. Super. Ct. Apr. 17, 2020) (collecting cases) (citations omitted); *see also, e.g.*, *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 374 (2001) ("[The] plaintiff's claim that defendants engaged in unfair and deceptive trade practices rests with its claims for misappropriation of trade secrets, tortious interference with contracts and civil conspiracy. Having determined that the trial court properly granted summary

judgment on each of these claims, we likewise conclude that no claim for unfair and deceptive trade practices exists."); *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at \*40 (N.C. Super. Ct. Oct. 15, 2015); *see also Bite Busters, LLC v. Burris*, 2021 NCBC LEXIS 26, at \*26–28 (N.C. Sup. Ct. Mar. 25, 2021); *Prometheus Grp. Enters., LLC v. Gibson,* 2023 NCBC LEXIS 42, at \*37–38 (N.C. Super. Ct. Mar. 21, 2023); *Evergreen Builder Sols., LLC v. Taylor*, 2025 NCBC LEXIS 174, at \*28–29 (N.C. Super. Ct. Dec. 29, 2025).

38.     Here, Plaintiff expressly confirms in his complaint that the sole basis for his Chapter 75 cause of action is his contention that "Defendant engaged in unfair and deceptive trade practices by misappropriating confidential information, records and the Plaintiff's book of clients." (ECF No. 8, ¶ 18).

39.     Inasmuch as Plaintiff's Chapter 75 cause of action hinges on Defendant's alleged misappropriation of trade secrets, dismissal is appropriate as set forth above. *Combs & Assocs.*, 147 N.C. App. at 374; *Charah, LLC*, 2020 NCBC LEXIS 52, at \*19; *Amerigas*, 2015 NCBC LEXIS 98, at \*40; *Bite Busters, LLC*, 2021 NCBC LEXIS 26, at \*26–28; *Prometheus,* 2023 NCBC LEXIS 42, at \*11; *Evergreen*, 2025 NCBC LEXIS 174, at \*28–29.

40.     Moreover, even if it were based on other or additional conduct, this cause of action would still fail because Plaintiff's complaint is purely conclusory and lacks sufficient factual allegations to adequately plead a Chapter 75 cause of action. *See, e.g.*, *Washburn*, 190 N.C. App. at 327; *Stephenson v. Langdon*, 2010 N.C. App. LEXIS 1682, at \*18 n.7 (2010) (unpublished); *see also Unimin Corp. v.*

*Gallo*, 2014 NCBC LEXIS 44, at \*43–44 (N.C. Super. Ct. Sept. 4, 2014); *Edgewater Services v. Epic Logistics, Inc.*, 2009 NCBC LEXIS 21, at \*9–16 (N.C. Super. Ct. Aug. 11, 2009); *see generally Akzo*, 2011 NCBC LEXIS 42.

41.     Therefore, the Court **GRANTS** Defendant's motion and **DISMISSES WITH PREJUDICE** Plaintiff's Chapter 75 cause of action.

### III.     CONCLUSION

42.     For the foregoing reasons, Defendant's motion to dismiss, (ECF No. 11), is **GRANTED**, and this action is accordingly **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 19th day of March 2026.

/s/ Matthew T. Houston
Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases
